UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CLIFTON LITTLE, et al.,

                              Plaintiffs,                    Case No. 12-CV-5851(KMK)

          -v-                                               <u>OPINION & ORDER</u>

MUNICIPAL CORPORATION et al.,

                              Defendants.

<u>Appearances</u>

Clifton Little
Romulus, NY
*Pro Se Plaintiff*

Anthony Romero
Auburn, NY
*Pro Se Plaintiff*

Timothy Beckman
Bronx, NY
*Pro Se Plaintiff*

Terry Patterson
East Elmhurst, NY
*Pro Se Plaintiff*

Jalah Knight
East Elmhurst, NY
*Pro Se Plaintiff*

Martin Concepcion
East Elmhurst, NY
*Pro Se Plaintiff*

David Alan Rosinus, Jr., Esq.
New York City Law Department
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

Plaintiffs Clifton Little, Anthony Romero, Timothy Beckman, Terry Patterson, Jalah Knight, and Martin Concepcion (collectively, "Plaintiffs"), proceeding pro se, bring this Action against Municipal Corporation, The City of New York ("the City"), Commissioner of the New York City Department of Correction Dora B. Schriro ("Commissioner Schriro"), Warden Ardo, Warden Duffy, Captain Bernadette Brown ("Brown"), Correction Officer Mikell Spears ("Spears"), and Captain Elio Elias ("Elias"), (collectively, "Defendants"), for injuries that Plaintiffs allegedly received while incarcerated at the George R. Vierno Center at Rikers Island. Defendants move to dismiss pursuant to Rule 12(b)(6).  For the reasons stated below, Defendants' Motion is granted.

<u>I.  BACKGROUND</u>

<u>A. Factual Background</u>

Plaintiffs' Amended Complaint contains a litany of grievances related to the conditions of Plaintiffs' confinement and incidents that occurred while they were confined.  These allegations appear to fall into six categories:

First, Plaintiffs allege excessive confinement.  They claim to have been "illegally locked in their cells for excessive amounts of" time.  (Am. Compl. 6.)[1]  Plaintiffs further claim that they were deprived food during some of these periods of confinement.  (*Id.* at 6–9.)  Specifically, on May 14, 2012, Plaintiffs claim to have been locked in their cells "for an excessive amount of hours without being fed."  (*Id.* at 8.)  Plaintiffs also claim to have been confined to their cells for

---

[1] Plaintiffs' Amended Complaint consists of the standard Amended Complaint form provided by the Court to pro se plaintiffs, to which Plaintiffs have attached a number of handwritten addenda.  For purposes of clarity, the Court will cite to Plaintiffs' Amended Complaint using the page numbers added by Defendants to Plaintiffs' Amended Complaint. (*See* Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("Defs.' Mem.") Ex. B (Dkt. No. 57).)

a period of nearly 24 hours, from 9:07 p.m. on July 11, 2012 until approximately 8:00 p.m. on July 12, 2012.  (*Id.* at 9.)  During this lock-in, Plaintiffs allege to have suffered verbal abuse and headaches and were fed "whatever DOC personnel felt like."  (*Id.*)  In addition, Little claims to have been placed in pre-hearing detention during an investigation into an August 11, 2012 incident and that he was held from August 11 to 18, 2012, before being released.  (*Id.* at 10–11.) During this detention, Little alleges that he was verbally abused, threatened, and sprayed with a chemical agent that caused burning to his eyes and shortness of breath.  (*Id.* at 10.)

Second, Plaintiffs allege unsanitary housing conditions.  Plaintiffs Little, Romero, and Patterson claim that cells in which they were confined flooded with sewage on March 3, 2012. (*Id.* at 7.)  These three Plaintiffs claim to have been confined in the flooded cells from 11:30 a.m. until 8:00 p.m., forced to walk through the effluent, and then locked out of their cells.  (*Id.*) Plaintiffs also allege that, in June 2012, they were not permitted have their linens—specifically "pillowcases, towels, wash cloth[]s, and sheets"—cleaned or exchanged, which caused Plaintiffs to suffer skin irritation and loss of hair.  (*Id.* at 7, 20.)

Third, Plaintiffs allege that they were effectively or functionally denied access to the prison law library.  Plaintiffs claim that simultaneous scheduling of inmates' access to the law library, sick call, chaplain, social services, legal aid, and prisoner grievance office forced Plaintiffs to "choose which to attend."  (*Id.* at 8.)  Plaintiffs also claim that they were denied access to the law library outright on July 10, 2012, (*id.* at 9, 21), that they were only given a half hour of law library access the next day and, that when they complained, Plaintiffs were told that they "need[ed] to stop coming down here to have gang meetings," (*id.* at 9), which Plaintiffs deny having.  Plaintiffs also allege that the prison lacks a dedicated word processor for prisoner use.  (*Id.* at 21.)

Fourth, Plaintiffs claim that they are being subjected to disparate treatment and "classified based on who they associate with" in violation of their right to due process. (*Id.* at 20.) They claim to have been "re-classified," given different IDs, and placed on a Security Risk Group ("SRG") list, fired from their work assignments, forced to wear lime green prison clothes on visiting floors, subjected to "intense discriminatory search[e]s" in which personal property was taken or destroyed, and re-housed, all "without investigation." (*Id.* at 6.)

Fifth, Plaintiffs complain about being subject to strip searches and searches of their cells. Plaintiffs Little, Patterson, and Knight allege that on July 5 and 12, 2012, they and other inmates on a "[t]arget list" had their cells searched and were forced to undergo strip searches, while the entire facility was placed on lock down. (*Id.* at 8.) Little alleges that his cell was searched again on August 4, 2012, and that his "belongings [were] thrown on the floor," his clothes placed in the toilet, and other items—including legal paperwork—were removed from his cell without a receipt documenting the seizure. (*Id.* at 9–10.)

Finally, Little alleges that, on February 13, 2012 at approximately 6:45 p.m., he was "repeatedly punched, kicked, and slapped" by members of prison staff "for close to 20 minutes" and then restrained. (*Id.* at 11.) Little received medical attention, including X-rays for the resulting injuries, but claims to have lasting marks and numbness from this incident. (*Id.* at 11–12.)

B.  Procedural Background

On July 30, 2012, Plaintiffs filed their Complaint. (*See* Dkt. No. 2.) Pursuant to the Court's May 6, 2013 Order, (*see* Dkt. No. 48), Little attempted to file an Amended Complaint on July 15, 2013, though none of the other Plaintiffs signed this document, (*see* Dkt. No. 50). The Court construes this Amended Complaint to allege violations of the Eighth and the Fourteenth

4

Amendments, *see United States v. Georgia*, 546 U.S. 151, 157 (2006) (noting that "the Due Process Clause of the Fourteenth Amendment incorporates the Eighth Amendment's guarantee against cruel and unusual punishment" (citing *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463 (1947) (plurality opinion))), which violations would entitle Plaintiff to damages under 42 U.S.C. § 1983.  In addition, the Court construes the Amended Complaint to allege violations of Plaintiffs' right to due process under the Fourteenth Amendment, state law, and New York administrative regulations.

Plaintiffs claim to have suffered "Mental Anguish, Stomach Pains, dizz[i]ness, headache[s], nausea, emotional depression, emotional distress, exhaustion, chest pains, def[a]mation of character, verbal abuse, starvation, discrimination, [and] los[s] of weight . . . [and] hair" due to the alleged violations.  (Am. Compl. at 14, 24.)  By way of remedy, Plaintiffs seek injunctive relief against all Defendants, compensatory damages in the amount of $5,000,000 "against each of the defendants," and punitive damages in the amount of $50,000,000 "against each of the defendants."  (*Id.* at 24.)

Defendants filed a Motion To Dismiss Plaintiffs' Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, along with a Memorandum of Law in Support of their Motion, on November 12, 2013.  (*See* Dkt. Nos. 56, 57.)  Pursuant to the Court's October 9, 2013 Scheduling Order, Plaintiffs were to file a response to Defendant's Motion to Dismiss by December 12, 2013, however Plaintiffs have not yet done so.  (*See* Dkt. No. 55.) Defendants' Motion and supporting Memorandum were served upon Plaintiffs by mail, (*see* Dkt. No. 58), and there is no indication that the Plaintiffs failed to receive these documents.  To the contrary, Little subsequently filed a change of address with the Court in which he acknowledged receipt of Defendants' Motion.  (*See* Dkt. No. 60.)  More than eight months have passed since

Defendants served their Motion, yet Plaintiffs have not filed a response.  Accordingly, the Court will decide the Motion on the papers received to date.

## II.  DISCUSSION

### A.  Standard of Review

The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (third alteration in original) (citations omitted).  Instead, the Supreme Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563.  A plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  But if a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

In considering Defendants' Motion To Dismiss, the Court is required to consider as true the factual allegations contained in the Amended Complaint. *See Ruotolo v. City of New York*,

514 F.3d 184, 188 (2d Cir. 2008) ("We review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)); *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008) (same).  Moreover, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

Because Plaintiffs are proceeding pro se, the Court must construe their pleadings liberally and "interpret them to raise the strongest arguments that they suggest."  *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 347 (S.D.N.Y. 2009) (internal quotation marks omitted); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006).  This admonition "applies with particular force when a plaintiff's civil rights are at issue." *Maisonet*, 640 F. Supp. 2d at 348; *see also McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004).  But the liberal treatment afforded to pro se litigants does not exempt pro se parties "from compliance with relevant rules of procedural and substantive law."  *Maisonet*, 640 F. Supp. 2d at 348 (internal quotation marks omitted).

B.  Analysis

1.  Parties to this Action

As an initial matter, the Court will address several issues concerning the proper parties to this Case.  On May 6, 2013, Plaintiffs were instructed to file an Amended Complaint by July 11, 2013.  (*See* Dkt. No. 48.)  Little provided the Court with an Amended Complaint on July 15,

2013.[2]  (*See* Dkt. No. 50.)  However, no Plaintiff other than Little signed the Amended

Complaint (which is somewhat puzzling, given that another Plaintiff is listed on the Affidavit of

Service, but did not sign it or the Amended Complaint).[3]  (*See* Am. Compl. 26.)  A pro se litigant

cannot serve as counsel for his or her fellow litigants.  *See U.S. ex rel. Mergent Servs. v.*

*Flaherty*, 540 F.3d 89, 92 (2d Cir. 2008) (noting that "an individual who is not licensed as an

attorney may not appear on another person's behalf in the other's cause" (internal quotation

marks omitted)).  Thus, the Court will interpret the Amended Complaint, which was filed by

Little, to apply to Little alone.[4]  The other Plaintiffs are reminded of their obligation to comply

with the Court's May 6, 2013 Order or risk dismissal for failure to prosecute their claims

pursuant to Rule 41(b).  *See* Fed. R. Civ. P. 41(b).[5]

   In addition, Plaintiffs' Amended Complaint names six new defendants: Correction

Officer Romeiro Hill, Captain Cimato, Correction Officer Lewis, Officer Cregg of the Gang

---

[2] In consideration of Plaintiffs' pro se status, as well as the challenges inherent in prosecuting a case while incarcerated, the Court will consider the Amended Complaint to have been timely.

[3] Little requested the Court assist in obtaining the signatures of the other Plaintiffs, but the other Plaintiffs have expressed no interest in continuing to pursue this litigation.  In fact, no Plaintiff other than Little has filed anything with the Court since January 9, 2013.  (*See* Dkt. No. 39.)

[4] For purposes of rhetorical consistency, because the Amended Complaint purports to bring claims on behalf of all Plaintiffs, and because Plaintiffs other than Little may wish to file their own Amended Complaints raising the same issues, the Court will use "Plaintiffs" throughout this Opinion, rather than referring only to Little.

[5] In light of the Second Circuit's decision in *Baptiste v. Sommers*, — F.3d —, 2014 WL 4723272 (2d Cir. Sept. 24, 2014), the Court will not dismiss the other pro se Plaintiffs claims at this time.  Dismissal of a pro se plaintiff's claims is the "harshest of sanctions" and is "only to be used in extreme circumstances" after the court has considered the five factors articulated in *Baptiste* and *Lucas v. Miles,* 84 F.3d 532 (2d Cir. 1996).  *Baptiste*, 2014 WL 4723272, at *3; *see also Miles*, 84 F.3d at 535.  Instead, the Court will provide each of the Plaintiffs in this case with the opportunity to file their own amended complaints within 30 days of this Order.

Intelligence Unit, Correction Officer Jackson, and Correction Officer Chapman (collectively "New Defendants").  (*See* Am. Compl. 3.)  In a July 3, 2013 letter to Defendants' Counsel, Plaintiffs state that they served a copy of the Amended Complaint on Defense Counsel, (*see* Dkt. No. 50), however, Defense Counsel did not represent the New Defendants at that time.  Over a year has passed since Plaintiffs filed their Amended Complaint, yet the New Defendants have yet to be properly served.  Without service of the New Defendants, either by Plaintiffs themselves or though the assistance of the U.S. Marshals, the Court cannot consider them to be parties to this Case.  *See Ordonez v. USAA*, No. 11-CV-5286, 2013 WL 837599, at *2 (S.D.N.Y. Mar. 6, 2013) (dismissing the plaintiff's complaint against an individual defendant who plaintiff had failed to serve, more than six months after filing a complaint).[6]  This ruling is without prejudice should Plaintiffs later serve the New Defendants.

### 2.  *Monell* Liability

Defendants argue that Plaintiffs have failed to state a cause of action against the City and Commissioner Schriro in her official capacity, even if Plaintiffs have plausibly pleaded a violation of their rights by Defendants' employees.  *See Ciambriello v. Cty. of Nassau,* 292 F.3d 307, 323 (2d Cir. 2002) ("In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law.").  In order for Plaintiffs to prevail on any of their § 1983 claims against the City, they must satisfy the requirements for municipal liability, as set forth in *Monell v. Department of Social Services of N.Y.C,* 436 U.S. 658 (1978), and its progeny.  It is well-settled that "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy

---

[6] As Correction Officer Lewis is the only named perpetrator in the assault claim Little alleges, (Am. Compl. 11), the Court must dismiss this claim, as discussed below.

of some nature caused a constitutional tort."  *Monell,* 436 U.S. at 691.  Thus, "to prevail on a

claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is

required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or

statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality

caused the constitutional injury."  *Roe v. City of Waterbury,* 542 F.3d 31, 36 (2d Cir. 2008).  The

fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely

because it employs a tortfeasor."  *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S.

397, 403 (1997); *see also Newton v. City of New York,* 566 F. Supp. 2d 256, 270 (S.D.N.Y.

2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may

only be held liable when the municipality itself deprives an individual of a constitutional right.").

In other words, a municipality may not be held liable under § 1983 "by application of the

doctrine of *respondeat superior.*"  *Pembaur v. City of Cincinnati,* 475 U.S. 469, 478 (1986); *see

also Vassallo v. Lando,* 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal

entity may only be held liable where the entity *itself* commits a wrong").  Instead, there must be

a "direct causal link between a municipal policy or custom and the alleged constitutional

deprivation."  *City of Canton v. Harris,* 489 U.S. 378, 385 (1989); *see also City of St. Louis v.

Praprotnik,* 485 U.S. 112, 122 (1988) ("[G]overnmental bodies can act only through natural

persons . . . [and] governments should be held responsible when, and only when, their official

policies cause their employees to violate another person's constitutional rights.").

      "In determining municipal liability, it is necessary to conduct a separate inquiry into

whether there exists a 'policy' or 'custom.'"  *Davis v. City of New York,* 228 F. Supp. 2d 327,

336 (S.D.N.Y. 2002), *aff'd,* 75 Fed. Appx. 827 (2d Cir. 2003).  Normally, "a custom or policy

cannot be shown by pointing to a single instance of unconstitutional conduct by a mere

employee of the [municipality]." *Newton,* 566 F. Supp. 2d at 271; *see also City of Oklahoma v. Tuttle,* 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." (plurality opinion)); *Brogdon v. City of New Rochelle,* 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation."). "The Supreme Court has identified at least two situations that constitute a municipal policy: (1) where there is an officially promulgated policy as that term is generally understood (i.e., a formal act by the municipality's governing body), and (2) where a single act is taken by a municipal employee who, as a matter of State law, has final policymaking authority in the area in which the action was taken." *Newton,* 566 F. Supp. 2d at 271 (footnote omitted).

"A municipal 'custom,' on the other hand, need not receive formal approval by the appropriate decisionmaker . . . ." *Id.* Instead, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Brown,* 520 U.S. at 404; *see also Kern v. City of Rochester,* 93 F.3d 38, 44 (2d Cir. 1996) (noting that a municipality's custom "need not be memorialized in a specific rule or regulation"). To prevail on this theory of municipal liability, however, a plaintiff must prove that the custom at issue is permanent and well-settled. *See Praprotnik,* 485 U.S. at 127 (noting that the Supreme Court "has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so

permanent and well settled as to constitute a custom or usage with the force of law" (internal

quotation marks omitted)).

Here, Plaintiffs have not alleged any facts to plausibly establish a policy, custom, or

practice that would provide plausible grounds for a § 1983 claim against the City or

Commissioner Schriro in her official capacity.  The Amended Complaint catalogues a number of

incidents that Plaintiffs understandably find objectionable, but it does not explicitly identify a

policy, custom, or practice promulgated by the City or Commissioner Schiro that would form the

basis for a valid claim.  Nor does the Amended Complaint allege an action or conduct by

Commissioner Schriro that makes her personally responsible for the alleged constitutional fouls.

When the Amended Complaint is read in the light most favorable to Plaintiffs, the only

arguable policies, customs, or practices referenced are the scheduling of inmate activities at the

same time as law library access and the use of "target lists" and classification of inmates within

the facility at issue.  As discussed in greater detail later in this opinion, these complaints do not

provide grounds for a valid claim.  *See infra* § II(B)(5).

Furthermore, the Amended Complaint fails to claim that several of the named Defendants

acted to Plaintiffs' detriment.  However, '[t]o meet minimum pleading standards, a plaintiff must

name defendants who were personally involved with the alleged constitutional violation" and "to

impose liability on the City for the unconstitutional conduct of its employees, [a] plaintiff must

name the individual [employee] who allegedly infringed upon her rights."  *Ogunbayo v.*

*Montego Med. Consulting P.C.*, Nos. 11-CV-4047, 12-CV-428, 2012 WL 6621290, at *13 n.18

(E.D.N.Y. Sept. 18, 2012), *adopted by* 2012 WL 6625921 (E.D.N.Y. Dec. 19, 2012); *see also*

*Soto v. Brooklyn Corr. Facility,* 80 F.3d 34, 35 (2d Cir. 1996) (holding that "to maintain a [§]

1983 action arising from conduct that was not alleged to have been part of any institutional

custom or policy," a litigant should name as defendants the "officers responsible" for the alleged violation); *Lukes v. Nassau Cnty. Jail,* No. 12-CV-1139, 2012 WL 1965663, at *5 (E.D.N.Y. May 29, 2012) (requiring plaintiff to "clearly identify the individual(s) personally responsibly for any alleged violation of his constitutional rights" in his amended complaint); *Robinson v. City of New York*, No. 10-CV-4947, 2011 WL 318093, at *3 (E.D.N.Y. Jan. 31, 2011) (noting that "[a] § 1983 plaintiff seeking to recover money damages must name individual defendants who were personally involved in the wrongdoing or misconduct complained of").  Furthermore, as there is no respondeat superior liability for § 1983 claims against the City, Commissioner Schriro, Warden Ardo, or Warden Duffy, the Complaint fails to state a plausible § 1983 claim against them, even if their employees or subordinates are or were tortfeasors.  *See Southerland v. City of New York,* 681 F.3d 122, 137 (2d Cir. 2012) (noting that "[m]unicipalities are not liable under [§] 1983 for the actions of their employees based on respondeat superior; municipalities are liable only if the violation of individual rights results from the government's policy or custom"); *Rahman v. Fisher*, 607 F. Supp. 2d 580, 584–85 (S.D.N.Y. 2009) (noting that "the doctrine of respondeat superior . . . does not suffice to impose liability for damages under [§] 1983 on a defendant acting in a supervisory capacity" (internal quotation marks omitted) (citing *Hayut v. State Univ. of New York,* 352 F.3d 733, 753 (2d Cir. 2003))).  Accordingly, Plaintiffs' Amended Complaint is dismissed with respect to these Defendants, as it fails to state a claim against them.

### 3.  Conditions-of-Confinement Claims

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.  Under the Eighth Amendment, officials may not "create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety."

13

*Overton v. Bazzetta*, 539 U.S. 126, 137 (2003).[7]  However, the Eighth Amendment does not

require "comfortable" prison conditions; rather, it ensures that conditions of confinement do not

"involve the wanton and unnecessary infliction of pain."  *Rhodes v. Chapman*, 452 U.S. 337,

347, 349 (1981).  "To state an Eighth Amendment claim based on conditions of confinement, an

inmate must allege that: (1) objectively, the deprivation the inmate suffered was sufficiently

serious that he was denied the minimal civilized measure of life's necessities, and (2)

subjectively, the defendant official acted with a sufficiently culpable state of mind, such as

deliberate indifference to inmate health or safety."  *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir.

2013) (alterations and internal quotation marks omitted).  "To meet the objective element, the

inmate must show that the conditions, either alone or in combination, pose an unreasonable risk

of serious damage to his health."  *Id.*; *see also Seymore v. Dep't of Corr. Servs.*, No. 11-CV-

2254, 2014 WL 641428, at *3 (S.D.N.Y. Feb. 18, 2014) ("[T]he Second Circuit . . . has

explained that 'because society does not expect or intend prison conditions to be comfortable,

only extreme deprivations are sufficient to sustain a conditions-of-confinement claim'"

(alteration and internal quotation marks omitted) (quoting *Blyden v. Mancusi*, 186 F.3d 252, 263

_____

[7] In the Complaint, Plaintiffs do not indicate whether they were convicted prisoners or pretrial detainees during the relevant time period.  A convicted prisoner's claim based on the conditions of his confinement is analyzed under the Eighth Amendment.  *See Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (noting that the Eighth Amendment governs medical claims of convicted persons because of its prohibition of "cruel and unusual punishment").  In the case of a state pretrial detainee, however, the same claim is analyzed under the Fourteenth Amendment's Due Process Clause.  *See Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) (noting that because a pretrial detainee is not being "punished," pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment).  However, Plaintiffs' status is largely of no moment, because "[c]laims for deliberate indifference to a . . . serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment."  *Id.* at 72.  Nonetheless, should Plaintiffs refile their Complaint, the Court encourages them to plead whether they were convicted prisoners or pretrial detainees at the time of the relevant incidents.

14

(2d Cir. 1998))).  "To meet the subjective element, [a] plaintiff must show that the defendant

acted with more than mere negligence," and instead that the defendant knew of and disregarded

"an excessive risk to inmate health or safety."  *Walker*, 717 F.3d at 125 (internal quotation marks

omitted).

a.  Significantly Serious Deprivation

With regard to the objective element of Plaintiffs' conditions-of-confinement claims,

Plaintiffs' complaints include excessive confinement without food, sewage-flooded cells, and

denial of laundry privileges.

Plaintiffs repeatedly allege that they were locked in their cells "for excessive amounts of

hours," (Am. Compl. 6–9), during several of which periods they lacked "air and food," (*id.* at 6,

8).  As an initial matter, the Court notes that Plaintiffs do not allege whether the excessive

confinement to which they object was in solitary confinement or shared cells.  However, the

Second Circuit has permitted indefinite solitary confinement in prisons, as long as "the

conditions of the inmate's solitary confinement me[e]t the minimum standards imposed by the

Eighth Amendment."  *Williams v. Greifinger*, 97 F.3d 699, 705 (2d Cir. 1996) (citing *Sostre v.

McGinnis*, 442 F.2d 178, 193 n.23 (2d Cir. 1971)); *see also Mendez v. Amato*, No. 12-CV-560,

2013 WL 5236564, at *11 (N.D.N.Y. Sept. 17, 2013) (holding that confinement in

administrative segregation for twenty-three hours a day was insufficient to support an Eighth

Amendment claim).  Plaintiffs do not allege they were confined for days or weeks, but rather

"hours."  (*See* Am. Compl. 6–9.)  Furthermore, to the extent that Plaintiffs complaint regarding a

lack of air refers to lack of out-of-cell recreation,[8] Plaintiffs fail to allege that they were denied

---

[8] This is a fair reading of Plaintiffs' Amended Complaint, as opposed to a literal reading
to mean that Plaintiffs were deprived of all air.

15

opportunity to exercise such as to provide grounds for an Eighth Amendment claim.  *See*

*Mendez*, 2013 WL 5236564, at *11 (dismissing Eighth Amendment claim based on 23-hour

solitary confinement where the plaintiff failed to identify deprivation of "a single, identifiable

human need"), *Shakur v. Sieminski*, No. 07-CV-1239, 2009 WL 2151174, at*4 (D. Conn. July

15, 2009) ("While courts have found that denial of all opportunity to exercise violates an

inmate's constitutional rights, they have found no violation where the inmate has an opportunity

for exercise, either in or outside of his cell." (citing *Williams*, 97 F.3d at 703–05)).  Moreover,

"there is no constitutional right to outdoor recreation."  *Shakur*, 2009 WL 2151174, at *4.

Plaintiffs' Amended Complaint generally alleges that they have been unconstitutionally

deprived of food during these periods of confinement.  (*See* Am. Compl. 6–8.)  While "the

Eighth Amendment . . . require[s] that prisoners be served nutritionally adequate food that is

prepared and served under conditions which do not present an immediate danger to the health

and well being of the inmates who consume it," *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir.

1983) (internal quotation marks omitted), and while "under certain circumstances a substantial

deprivation of food may well be recognized as being of constitutional dimension," *id.*, Plaintiffs

have not pled a deprivation to this degree.  Rather, Plaintiffs allege that they were denied food on

March 3, 2012 "between 11:30 am [and] 8:00 pm," (Am. Compl. 7), on July 11, 2012 from

approximately 9:07 p.m. to July 12, 2012 at 8 p.m., (*id.* at 9), and generally during periods of

confinement "from January 2012 to present," (*id.* at 6).[9]  Furthermore, Plaintiffs do not claim

---

[9] With respect to the latter two of these claims, Plaintiffs do not identify who deprived
them of food.  This alone justifies dismissal of these two claims.  *See Lukes*, 2012 WL 1965663,
at *5 (noting that plaintiffs asserting a claim under § 1983 must "clearly identify the
individual(s) personally responsibly for any alleged violation of his constitutional rights").
However, as to the July 11–12 time frame, Plaintiffs allege that they were fed "whatever DOC
personnel felt like," not that they were denied food altogether.  (Am. Compl. 9.)

that they were denied food entirely, but rather that they were not allowed to eat during periods of

lock-down.  Plaintiffs also claim to have suffered "nausea due to cold food" in their cells during

the same general period.  (*See id.*)  While the Court is not without sympathy, it nonetheless

concludes that Plaintiffs have failed to allege deprivation of "the measure of food necessary to

maintain health," but rather have described the sort of "isolated" withholdings that do not

typically rise to a level of constitutional significance.  *Reeder v. Hogan*, No. 09-CV-520, 2012

WL 4107822, at *18 (N.D.N.Y. July 11, 2012), *adopted by* 2012 WL 4106740 (N.D.N.Y. Sept.

19, 2012); *see also Mordi v. Ziegler*, No. 11-CV-193, 2012 WL 195609, at *7 (S.D. Ill. Jan. 23,

2012) (dismissing the plaintiff's Eighth Amendment claim and noting that "[ ]though the

conditions described by [the p]laintiff were unpleasant and perhaps unreasonable, it is clear that

he was subjected to these conditions for only a short time—fewer than twenty-four hours

without food, and approximately eight hours in handcuffs"); *Inesti v. Hogan*, No. 11-CV-2596,

2013 WL 791540, at *24 (S.D.N.Y. Mar. 5, 2013), *adopted by* 2013 WL 5677046 (S.D.N.Y.

Sept. 30, 2013) (holding that one meal missed was insufficient to establish a constitutional

violation); *Cagle v. Perry,* No. 04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24,

2007) (holding that two meal deprivations were not sufficiently numerous, prolonged, or severe

to rise to level of Eighth Amendment violation); *Zimmerman v. Seyfert*, No. 03-CV-1389, 2007

WL 2080517, at *27 (N.D.N.Y. July 19, 2007) (holding that requiring the plaintiff to go eleven

hours without eating did not rise to the level of a constitutional claim).  *Cf. Cano v. City of New*

*York*, No. 13-CV-3341, 2014 WL 4494169, at *7–8 (E.D.N.Y. Sept. 12, 2014) (holding that the

plaintiffs' complaint, which "alleged combination of overcrowded cells, exposure to insects,

rodents, extreme temperatures, and unsanitary conditions (including garbage, feces, urine, and

vomit), sleep deprivation, the lack of adequate food and water, the inability to clean themselves,

17

the lack of access to usable bathroom facilities, and the lack of protection from the crimes and conduct of other inmates" sufficiently "alleged objectively serious conditions depriving them of basic human needs, including food, a habitable temperature, sleep, and the ability to relieve oneself without exposure to other human excrement, among others"); *Boadi v. City of New York,* No. 12-CV-2456, 2012 WL 3062063, at *4 (E.D.N.Y. July 26, 2012) (finding that a complaint alleging the deprivation of an incarcerated individual's ability to "eat, drink, or use the bathroom for 18 consecutive hours" is sufficient to state a claim for deliberate indifference).  The Amended Complaint thus fails to allege a sufficiently serious deprivation to substantiate an Eighth Amendment conditions-of-confinement claim with respect to depravation of food.

Plaintiffs Little, Romero, and Patterson also allege that they were subjected to confinement for several hours on March 3, 2012 in cells that flooded with sewage and that they were ultimately forced to walk through the sewage to leave their cells.  (*See* Am. Compl. 7.) While "chronic exposure to human raise waste will give rise to a colorable [§ 1983] claim[,] . . . where exposure to such waste is intermittent or limited to a matter of hours, courts normally will not entertain such actions."  *Ortiz v. Dep't of Corr.*, No. 08-CV-2195, 2011 WL 2638137, at *6–7 (S.D.N.Y. Apr. 29, 2011), *adopted by* 2011 WL 2638140 (S.D.N.Y. July 5, 2011).  Indeed, courts in the Second Circuit have repeatedly held sporadic or brief exposure to waste does not amount to a constitutional violation.  *See, e.g., Florio v. Canty*, 954 F. Supp. 2d 227, 234–35 (S.D.N.Y. 2013) (holding that two instances of confinement in cells with overflowing toilets and being forced to walk through ankle-high human waste was "simply too minor to state an Eighth Amendment claim"); *Myers v. N.Y.C.*, No. 11-CV-8525, 2012 WL 3776707, at *6–7 (S.D.N.Y. Aug. 29, 2012) (holding that the plaintiff failed to assert a constitutional violation where plaintiff was confined for "approximately 16 hours" in a cell in which "[t]he only place to sit in the cell

18

was on 'a urine and filth laden floor'"); *Ortiz*, 2011 WL 2638137, at *8 (holding that the

plaintiff's exposure to sewage overflows that lasted less than a total of 24 hours was "too limited

to withstand a motion to dismiss").  Here, Plaintiffs Little, Romero and Patterson allege that they

were confined in their sewage-flooded cells for, at most, eight and a half hours.  (*See* Am.

Compl. 7.)  While undeniably unpleasant, and something that prison officials should prevent,

this single unfortunate incident alleged is not grounds for an Eighth Amendment claim.

     With respect to Plaintiffs' claim that they were deprived of laundry services, "[p]risoners

are entitled under the constitution to have clothing that is clean or to have an opportunity to clean

it themselves."  *Patterson v. City of New York*, No. 11-CV-7976, 2012 WL 3264354, at *8

(S.D.N.Y. Aug. 9, 2012) (internal quotation marks omitted) (quoting *Benjamin v. Fraser*, 161 F.

Supp. 2d 151, 178 (S.D.N.Y. 2001), *aff'd in relevant part and vacated in part*, 343 F.3d 35 (2d

Cir. 2003)).  When a prison refuses or fails to wash a prisoner's clothes for him or her, as is

alleged here, a prisoner must allege that he or she was denied an "alternate opportunity or means

to clean his [or her] linens and clothing himself," in order to sustain an allegation of a

constitutional violation.  *Simmons v. Cripps*, No. 12-CV-1061, 2013 WL 1290268, at *16

(S.D.N.Y. Feb. 15, 2013), *adopted by* 2013 WL 1285417 (S.D.N.Y. Mar. 28, 2013); *see also*

*Brown v. McElroy*, 160 F. Supp. 2d 699, 706 (S.D.N.Y. 2001) (holding that an inmate's lack of

"clean linens and clothing," among other complaints, was "not sufficiently serious to state a

claim of unconstitutional conditions of confinement").  Here, Plaintiffs allege that they were

"deprived of their right to have their [clothes and linens] cleaned and or exchanged," (Am.

Compl. 7), but do not specifically allege that they were denied the opportunity to clean their

linens and clothing themselves.  *See Simmons*, 2013 WL 1290268, at *16 (noting that, "[a]s

Plaintiff has not alleged that the Rikers detention centers failed to provide him with any means to

wash his linens and clothing [such as a bar of soap], he has not sufficiently pleaded a constitutional violation").  Furthermore, Plaintiffs allege merely that the deprivation happened "[i]n June of 2012," (Am. Compl. 7), but do not plead the length of the deprivation, which is material to assessing whether the deprivation Plaintiffs suffered was significantly serious to constitute an Eighth Amendment violation.  *See Hallett v. Davis*, No.11-CV-4646, 2012 WL 4378020, at *4 (finding that the plaintiff, a pretrial detainee, failed to plead a significantly serious deprivation when the defendants failed to clean the plaintiff's blanket every three months, his mattress every six months, and his clothes twice a week in violation of New York City Board of Correction Minimum Standards, but where the plaintiff had access to clean linens); *Benjamin*, 161 F. Supp. 2d at 175 (noting that "courts are extremely reluctant . . . to find constitutional violations based on temporary deprivations of personal hygiene and grooming items . . ." (alteration and internal quotation marks omitted)).  In addition, Plaintiffs state that they "complained to all officers and area supervis[]ors," (Am. Compl. 7), but fail to identify the individuals—even as "John Doe" Defendants—who were responsible for the alleged deprivation.  Therefore, this claim is dismissed without prejudice.  Plaintiffs should be careful to articulate the extent and duration of their depravation of clean linens and clothing, as well as the individual(s) responsible, should they choose to replead this claim.

### b.  Deliberate Indifference

Even assuming that Plaintiffs have alleged one or more objectively serious deprivations, they have not sufficiently pleaded deliberate indifference to support their Eighth Amendment claim.  In order to survive a motion to dismiss, Plaintiffs' Amended Complaint must allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law."  *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

Most often, Plaintiffs' Amended Complaint fails to name an individual who is responsible for the conditions of which they complain, or a specific individual to whom Plaintiffs complained about these conditions.  (*See, e.g.,* Am. Compl. 7 (noting that Plaintiffs complained about their lack of clean linens to "officers and area supervisors," but failing to allege that the officials to whom Plaintiffs complained disregarded the issue.)  However, Plaintiffs specifically name several individuals in connection with some of their claims.  (*See Id.* at 7 (noting that Plaintiffs "complained to Officer Spears, Captain, Brown, Captain Elias, and Deputy Bailey" about the flooded cells but "received no response until hours later" when Plaintiffs were evacuated); 8 (noting that Plaintiffs complained about their confinement to "Captain Brown and unknown officers working housing unit 6A" and "complained to all officers, area supervisors, deput[ie]s and wardens" about their denial of access to the law library); 9 (noting that Plaintiffs spoke with Officer Chapman about access to the law library and that Officer Jackson confined Plaintiffs to their cells on July 11–12, 2012); 11 (noting that Little notified Captain Wynn that he was wrongfully detained in pre-hearing detention).  However, Plaintiffs fail to allege that these individuals expressed or exhibited behavior evident of a mental state equivalent to anything more than negligence.  *See Seymore v. Dep't of Corr. Servs.*, No. 11-CV-2254, 2014 WL 641428, at *4 (S.D.N.Y. Feb. 18, 2014) (dismissing the plaintiff's deliberate indifference claim for failure to plead that prison officials possessed a sufficiently culpable state of mind, where the plaintiff alleged that the defendants knew about the conditions that caused his injury, but "at most, alleged that various defendants were negligent in failing to correct conditions, not that any defendant obdurately and wantonly refused to remedy a specific risk to the plaintiff"); *Rivera v. Bloomberg*, No. 11-CV-629, 2012 WL 3655830, at *6 (S.D.N.Y. Aug. 27, 2012), *appeal dismissed* (Feb. 26, 2013) (finding that the plaintiffs' allegation that they

informed Commissioner Schriro of their claims involving contaminated water was nonetheless insufficient to plead deliberate indifference, and that "[e]ven if the [c]omplaints could be read to suggest that Commissioner Schriro failed to act, a prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official exhibited deliberate indifference by failing to act on information indicating that the violation was occurring" (alterations and internal quotation marks omitted)); *Williams v. Carbello*, 666 F. Supp. 2d 373, 380 (S.D.N.Y. 2009) (holding that the plaintiff failed to plead facts showing that a defendant was deliberately indifferent, where the plaintiff made one complaint to the defendant about bathroom conditions, but did not plead "any facts regarding what [the defendant] did or did not do with this information").  Should Plaintiffs choose to replead their deliberate indifference claims, the Court encourages them to carefully consider and articulate the knowledge and intent of the correctional officers and other individuals responsible for Plaintiffs' harms, in addition to Defendants' failure to timely and adequately respond to the same.

### 4.  Plaintiff Little's Assault

In addition to the other claims alleged in the Amended Complaint, Plaintiff Little claims that on February 15, 2012, Officer Lewis, members of the "Special Search Team" and "ESU Officers . . . repeatedly punched, kicked, and slapped [Little]. . . to the left side of his face . . . for close to 20 minutes."  (Am. Compl. 11.)  They also allegedly placed Little in restraints that led his left thumb to go numb, bruised his left wrist, and led to bleeding in both of Little's ankles. (*Id.* at 11–12.)  While Little received medical attention for these injuries, he claims to continue to suffer numbness in his left thumb and to have residual marks on both ankles.[10]  (*Id.* at 12.)

---

[10] As Little does not allege that his medical treatment was insufficient, or that prison officials unreasonably delayed in helping him obtain medical attention, the Court does not find the Amended Complaint to assert a claim of deliberate indifference to a medical condition.  (*See*

While these allegations are undeniably serious and could clearly provide grounds for an excessive force claim against the officers in question, the Amended Complaint fails to identify any responsible individual other than Officer Lewis, who has not been properly served and who is therefore not yet a defendant in this Action.  To the extent that Little does not know the names of the members of the Special Search Team or ESU Officers involved, he may name "John Doe" defendants and include as much identifying information as he has knowledge of, for the purpose of filing an amended complaint, should Little chose to do so.  This information will enable the Court to facilitate identification and service of these defendants, thereby satisfying its "duty to assist pro se plaintiffs in securing sufficient information to make service possible." *Brown v. N.Y.C. Dep't of Correction*, No. 08-CV-6526, 2010 WL 2813637, at *5 (S.D.N.Y. July 19, 2010)*; see also Valentin v. Dinkins,* 121 F.3d 72, 76 (2d Cir. 1997) (noting that a pro se litigant is entitled to assistance from the district court in identifying a defendant); *Robinson*, 2011 WL 318093, at *3 (requiring the plaintiff, who alleged claims against an unnamed defendant and one for whom the plaintiff only knew the defendant's last name, to provide "any additional information about the defendants, the positions they held or shifts they worked, their physical descriptions, and any other identifying information").  As the current Amended Complaint fails to name a Defendant responsible for the alleged assault, this claim is dismissed without prejudice.

---

Am. Compl. at 11–12.)  Indeed, "[t]he mere fact that an inmate feels that he did not receive adequate [medical] attention . . . does not constitute deliberate indifference." *Crique v. Magill*, No. 12-CV-3345, 2013 WL 3783735, at *3 (S.D.N.Y. July 9, 2013).  Furthermore, the Amended Complaint does not identify any individual who acted with the intent required to provide grounds for a deliberate indifference claim, which is further grounds to dismiss Little's claim. *See Soto,* 80 F.3d at 35; *Lukes*, 2012 WL 1965663, at *5.

5.  Plaintiffs' Other Claims

a.  Classification of Prisoners

To the extent that Plaintiffs' allege deprivation of their right to due process based on

disperate treatment and classification "based on who they associate with," (Am. Compl. 20), the

Amended Complaint also fails to state a claim.[11]  To succeed on a claim that Plaintiffs were

deprived of their Fourteenth Amendment right to due process, Plaintiffs must establish that "(1)

[they] possessed a liberty interest, and (2) that the defendant(s) deprived [them] of that interest

as a result of insufficient process."  *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004).  A

constitutionally protected "liberty interest may arise from the Constitution itself, by reason of

guarantees implicit in the word 'liberty'. . . or it may arise from an . . . interest created by state

laws," however this standard differs for convicted prisoners and pretrial detainees.  *Wilkinson v.

Austin*, 545 U.S. 209, 221 (2005).  "[T]o show a liberty interest, convicted prisoners must satisfy

a stringent atypical and significant hardship standard, . . . whereas pretrial detainees need not

---

[11] The Court interprets the Amended Complaint to allege deprivation of due process rights in which the officials involved were motivated by Plaintiffs' associations with various groups.  To the extent that Plaintiffs intended to raise a claim under the First Amendment, however, the Court notes that inmates' associational rights can be permissibly curtailed to a great degree due to the very nature of incarceration.  *See Overton*, 539 U.S. at 131 (noting that "[a]n inmate does not retain rights inconsistent with proper incarceration" and that the Supreme Court's cases "have established[ ] [that] freedom of association is among the rights least compatible with incarceration.  Some curtailment of that freedom must be expected in the prison context," and upholding prison regulations limiting prison visitation (citations omitted)); *Jones v. N.C. Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125–26 (1977) ("Perhaps the most obvious of the First Amendment rights that are necessarily curtailed by confinement are those associational rights that the First Amendment protects outside of prison walls. . . . Equally as obvious, the inmate's 'status as a prisoner' and the operational realities of a prison dictate restrictions on the associational rights among inmates."); *Vega v. Artus*, 610 F. Supp. 2d 185, 201-02 (N.D.N.Y. 2009) (same); *Fisher v. Goord,* 981 F.Supp. 140, 169 (W.D.N.Y. 1997) (noting that an "inmate does not have a constitutional or statutory right to associate with other inmates" (internal quotation marks and alteration omitted)).  To the extent that Plaintiffs believe their First Amendment rights have been violated during their incarceration, they should clearly state allegations to this effect in an amended complaint, should they choose to file one.

meet such a standard because a detainee's interest in freedom from unjustified infliction of pain and injury is more substantial." *Valdez v. City of New York*, No. 11-CV-5194, 2013 WL 8642169, at *5 (S.D.N.Y. Sept. 3, 2013) (citation and internal quotation marks omitted), *adopted by* 2014 WL 2767201 (S.D.N.Y. June 16, 2014).  This circumscribed liberty interest allows prison officials vast discretion in management of the prison population, including, among other things, security classification determinations. *See Greene v. Garcia*, No. 12-CV-4022, 2013 WL 1455029, at *5 (S.D.N.Y. Mar. 26, 2013) ("[P]rison officials have 'full discretion to control . . . conditions of confinement' such as a [convicted] prisoner's security classification, [thus convicted] prisoners have no 'legitimate statutory or constitutional entitlement sufficient to invoke due process' in connection with such conditions." (quoting *Pugliese v. Nelson*, 617 F.2d 916, 923 (2d Cir. 1980))); *Walker v. Shaw*, No. 08-CV-10043, 2010 WL 2541711, at *4 (S.D.N.Y. June 23, 2010) ("It is well settled that the administrative classification of [convicted] prisoners does not give rise to a protectable liberty interest under the Due Process Clause . . . [as it is] precisely the sort of [condition of] confinement that inmates should reasonably anticipate receiving at some point in their incarceration. . . . [Consequently,] [b]ecause prisoners have no liberty interest in being free from classification, they are also not entitled to due process before they are classified or prior to the imposition of conditions necessitated by their classification." (second alteration in original) (internal quotation marks omitted)).

To the extent that Plaintiffs allege that their due process rights were violated by their classification as "intended contraband recipients" ("ICRs") and being placed on an Security Risk Group ("SRG") list without any explanation, the Court's analysis is affected by whether Plaintiffs were pre-trial detainees or a convicted prisoners.  As noted, pre-trial detainees are subject to a standard more favorable than to convicted prisoners, who, in cases of administrative

classifications, are generally held not to implicate a liberty interest.  *See Valdez*, 2013 WL 8642169, at *8 n.5 (noting that in order "to show a liberty interest, convicted prisoners must satisfy a stringent atypical and significant hardship standard . . . whereas pretrial detainees need not meet such a standard because a detainee's interest in freedom from unjustified infliction of pain and injury is more substantial." (citations and internal quotation marks omitted)).

However, Plaintiffs do not allege facts sufficient to plausibly plead their due process claims, even if evaluated under the more favorable pre-trial detainee standard.  Courts in the Second Circuit have concluded that administrative classifications of "pretrial detainees, even where the classifications come with restrictive conditions, do not give rise to a liberty interest, absent an intent to punish."  *Valdez*, 2013 WL 8642169, at *8 (S.D.N.Y. Sept. 3, 2013); *see also Palacio v. Ocasio*, No. 02-CV-6726, 2006 WL 2372250, at *8–9 (S.D.N.Y. Aug. 11, 2006) (finding that detainee did not have liberty interest in remaining free of administrative status), *aff'd sub nom. Palacio v. Pagan*, 345 F. App'x 668 (2d Cir. 2009); *Adams v. Galleta*, No. 96-CV-3750, 1999 WL 959368, at *8 (S.D.N.Y. Oct. 19, 1999) (holding that pretrial detainee's administrative designation did not give rise to a liberty interest).  Plaintiffs' Amended Complaint does not allege that the classification of Plaintiffs as either ICR or SRG was done with an intent to punish.  In fact, Plaintiffs proffer no reason behind their classification—or even that such classification was wrongful, but merely make the bald allegation that such classification was illegal and done "without [Plaintiffs'] knowledge as to why [it was done]."  (*See* Am. Compl. 6.)

When a plaintiff fails to show an "express[] intent to punish on the part of detention facility officials," as Plaintiffs have failed here, the court must determine "whether an alternative purpose to which [the restriction] may rationally be connected" exists.  *Valdez*, 2013 WL 8642169, at *7 (internal quotation marks omitted) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535

26

(1979)).  In doing so, courts should give "wide-ranging deference [to prison officials] in the

adoption and execution of policies and practices that in their judgment are needed to preserve

internal order and discipline and to maintain institutional security." *Id.* (alteration in original)

(quoting *Bell*, 441 U.S. at 547).  "[T]he government . . . has legitimate interests . . . [in]

manag[ing] the facility in which the individual is detained[,] . . . maintain[ing] security and order

at the institution[,] and mak[ing] certain no weapons or illicit drugs reach detainees." *Bell*, 441

U.S. at 540; *see also Walker*, 2010 WL 2541711, at *4 (noting that "[a]dministrative

classification is used to separate potentially disruptive groups of inmates . . . [and to] control

conditions of confinement").

In addition, the Court must consider whether administratively classifying a pre-trial

detainee constituted or led to "conditions [that] amount[ed] to punishment of the detainee." *Bell*,

441 U.S. at 535; *see also Covino v. Vt. Dep't of Corr.*, 933 F.2d 128, 130 (2d Cir. 1991)

("Although the state may lawfully subject a pre-trial detainee to restrictions and conditions to

ensure his presence at trial, those conditions and restrictions cannot amount to punishment, or

otherwise violate the Constitution.") (alteration and internal quotation marks omitted); *Valdez v.

City of New York*, No. 11-CV-5194, 2014 WL 2767201, at *2 (S.D.N.Y June 17, 2014)

("Although courts should accord deference to prison officials in determining whether restrictions

imposed upon a pretrial detainee are reasonably related to a legitimate governmental objective,

the Second Circuit has held that an extreme restriction may smack of punishment so as to

warrant a factual inquiry into whether such a restriction is actually related to a legitimate

governmental interest." (alteration and internal citation omitted)).  However, the Amended

Complaint here does not allege conditions so extreme so as to amount to punishment of

Plaintiffs.  While Plaintiffs claim to have suffered from excessive confinement—which the Court

has dismissed as unsuccessfully pled—they do not specifically allege excessive solitary confinement.  Moreover, Plaintiffs' allegations that their classification led to their being "fired from work assignments," subjected to searches, "forced to wear lime green prison jumpers on visiting floors," and re-housed, do not rise to a level as to constitute punishment.  *See LaBounty v. Adler,* 933 F.2d 121, 124 (2d Cir. 1991) ("[E]xclusion from the prison's maintenance electrician program[] does not even constitute 'punishment,' let alone punishment that is 'cruel and unusual.'"); *Valdez*, 2014 WL 2767201, at *2 (finding that the plaintiff's conditions of confinement did not "smack of punishment" where the plaintiff and his family were subjected to invasive searches, generally rough treatment, and regular segregated confinement among others who were similarly classified, and further noting that the plaintiff may be able to show punishment if he could show that he was subjected to excessive solitary confinement); *Bussey v. Phillips*, 419 F. Supp. 2d 569, 579-80 (S.D.N.Y. 2006) (denying the plaintiff's due process claim arising from his termination from his prison job based on unproven facts in a misbehavior report and noting that "it is well settled that in New York a prisoner has no protected liberty interest in a particular job assignment" (internal quotation marks omitted)); *Harrison v. Fischer*, No. 08-CV-1327, 2010 WL 2653629, at *8 (N.D.N.Y. June 7, 2010), *adopted by* 2010 WL 2653477 (N.D.N.Y. June 29, 2010) (noting that "discharge from prison programming [such as work assignment programs] is also not a constitutional violation").  Accordingly, Plaintiffs' Amended Complaint is dismissed with respect to Plaintiffs' classification claims.

### b.  Law Library Access

Plaintiffs allege that they were denied access to the law library by being forced to choose between accessing the law library and attending other activities, (*see* Am. Compl. 8), by being denied access to the library outright, (*id.* at 9, 21), and by having their library time curtailed, (*id.*

at 9).  The Constitution guarantees confined individuals meaningful access to courts, which, in

the case of pro se litigants, includes access to a facility's law library, or to an alternative source

of legal information.  *See Bounds v. Smith*, 430 U.S. 817, 828 (1977); *Pollack v. Holanchock*,

No. 10-CV-2402, 2012 WL 1646893, at *2 (S.D.N.Y. May 10, 2012) (noting that "the law

requires only that those committed be provided the resources needed to attack their sentence or

the conditions of their confinement").  "Because law libraries and legal assistance programs do

not represent constitutional rights in and of themselves, but only the means to ensure a

reasonably adequate opportunity to present claimed violations of fundamental constitutional

rights to the courts, prisoners must demonstrate actual injury in order to have standing."

*Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir. 2001) (internal quotation marks omitted).

Impairment of an incarcerated person's "litigating capacity is simply one of the incidental (and

perfectly constitutional) consequences of conviction and incarceration."  *Pollack*, 2012 WL

1646893, at *2 (internal quotation marks omitted); *see Razzoli v. Exec. Office of U.S. Marshals*,

No. 10-CV-4269, 2010 WL 5051083, at *3 (E.D.N.Y. Dec. 2, 2010) (noting that "the

Constitution does not require unlimited and unsupervised access to a law library at the demand

of a prisoner," and that "[p]rison officials may impose reasonable restrictions on the use of a

prison law library").  In order for Plaintiffs to successfully plead a claim, they must allege that

the restrictions about which they complain "hindered [their] efforts to pursue a legal claim—for

example, by demonstrating that [they] ha[ve] been unable to file a complaint or [have] had a

complaint dismissed for failure to observe a technicality." *Benjamin,* 264 F.3d at 184.  Plaintiffs

have made no such allegation in their Amended Complaint.  Furthermore, access to legal

assistance need not be unfettered, and facilities "may place reasonable restrictions on inmates'

use of facility law libraries as long as those restrictions do not interfere with inmates' access to

29

the courts." *Melendez v. Haase*, No. 04-CV-73, 2010 WL 5248627, at *7 (S.D.N.Y. Dec. 15,

2010) (internal quotation marks).  Thus, the restrictions alleged in the Amended Complaint—as

well as the fact that these restrictions are not alleged to have caused Plaintiffs any harm—do not

rise to the level of unconstitutional obstruction of access to courts.  *See Johnson v. Nassau Cnty.*,

No. 13-CV-6510, 2014 WL 294250, at *6 (E.D.N.Y. Jan. 24, 2014) (holding that the plaintiff

"failed to state a plausible claim for relief" regarding access to the prison law library because he

"made no allegations regarding an actual injury he suffered due to the allegedly inadequate law

library or insufficient access to the law library"); *Simmons v. Adamy*, 987 F. Supp. 2d 302, 308

(W.D.N.Y. 2013) (dismissing the plaintiff's claim regarding denial of access to the prison law

library due to simultaneous scheduling with religious services, because the "plaintiff offers no

evidence that he was harmed by the lack of more frequent law library access"); *Hayes v. Cnty. of

Sullivan*, 853 F. Supp. 2d 400, 437 n.33 (S.D.N.Y. 2012) ("Plaintiff does not have a

constitutional right to access the law library whenever he wishes and has failed to show any

injury resulting from allegedly not being called to the law library every time he made a

request.").

Furthermore, with respect to Plaintiffs' allegation that the facility lacks a dedicated word

processor or typewriter for prisoner use, (*see* Am. Compl. 21), such an allegation does not state a

constitutional claim.  *Taylor v. Coughlin*, 29 F.3d 39, 40 (2d Cir. 1994) (noting that "due process

requires that prisoners have access to paper, pens, notarial services, stamps, and adequate library

facilities, [however] this court has ruled that there is no constitutional right to a typewriter as an

incident to the right of access to the courts" (internal quotation marks omitted)); *Jamison v.

Hayden*, No. 03-CV-913, 2008 WL 907316, at *5 (N.D.N.Y. Mar. 31, 2008) (noting that

"inmates, as a matter of law, do not have a constitutional right to a typewriter"); *Brown v.

30

*Nelson*, No. 05-CV-4498, 2008 WL 4104040, at *6 (S.D.N.Y. Aug. 29, 2008) (noting that "the Constitution requires access to paper, pens, notarial services, stamps, and adequate library facilities as the tools to produce hand-written submissions necessary to satisfy the right" to access the courts, and rejecting the plaintiff's argument that access to a dictionary is constitutionally required (alterations internal quotation marks omitted)).  Here, Plaintiffs have not alleged that the lack of a "dedicated word processor" has affected Plaintiffs' constitutional rights, including their right to access the courts—in fact, the filing of Plaintiffs' clear (and handwritten) Amended Complaint belies any contention to this effect.  Thus, Plaintiffs' Amended Complaint is dismissed with respect to Plaintiffs' allegations of restricted access to the law library and lack of a dedicated word processor.

c.  Searches

Plaintiffs' Amended Complaint cites several incidents in which Plaintiffs' cells were searched, (*see* Am. Compl. 6, 8–10), and in which Plaintiffs themselves were strip searched, (*id*. at 8).  Such searches are only actionable to the extent that they constitute cruel and unusual punishment in violation of the Eighth Amendment, "which is to say, if the cell search lack[s] any legitimate penological interest and [is] intended solely to harass."  *Jones v. Harris*, 665 F. Supp. 2d 384, 395 (S.D.N.Y. 2009).[12]  Here, the three searches specifically alleged, (Am. Compl. 8–10), as well as the general allegation that Plaintiffs were subject to "intense discriminatory search[e]s, (Am. Compl. 6), are insufficient to satisfy the objective element of an Eighth

---

[12] Periodic cell searches are so much an integral part of prison life that in *Hudson v. Palmer*, 468 U.S. 517 (1984), the United States Supreme Court held that a prisoner has no reasonable expectation of privacy in his prison cell.  *Id*. at 527–28.  As a result, even cell searches "conducted solely for harassment" do not implicate the Fourth Amendment.  *Willis v. Artuz*, 301 F.3d 65, 68 (2d Cir. 2002).  "The only constitutional limit on the search of a prison cell is imposed by the Eighth Amendment's bar against cruel and unusual punishment."  *Jones*, 665 F. Supp. 2d at 395.

31

Amendment claim. *See Mateo v. Bristow*, No. 12-CV-5052, 2013 WL 3863865, at *8 (S.D.N.Y.

July 16, 2013) (holding a single search to fail to rise to the level of a constitutional violation,

even where the plaintiff satisfied the subjective requirement for such a claim); *Jones*, 665 F.

Supp. 2d at 395 (holding that three cell searches in six weeks was not "so much a departure from

the norm as to be greater than a de minimis disruption," and did not provide basis for a claim of

cruel and unusual punishment).  Moreover, even if Plaintiffs' cells were searched without any

legitimate penological interest, and with a frequency as to satisfy the objective requirement of

Eighth Amendment claims, the Amended Complaint fails to specifically allege the prison official

or officials who conducted these searches, nor an individual who possessed the requisite intent to

satisfy the subjective element of an Eight Amendment claim.  *See Soto*, 80 F.3d at 35; *Lukes*,

2012 WL 1965663, at *5.  The Amended Complaint therefore fails to plead an actionable

complaint here.

        To the extent that Plaintiff Little asserts a constitutional claim on grounds that the August

4, 2012 search of his cell resulted in damage to his personal property and the removal of Little's

legal paperwork, these allegations are also insufficient to state a constitutional claim.  As an

initial matter, "[u]nder *Hudson* . . . , even the intentional destruction of an inmate's property by a

prison officer does not violate the Due Process Clause if the state provides that inmate with an

adequate post-deprivation remedy."  *Willey v. Kirkpatrick*, No. 07-CV-6484, 2013 WL 434188,

at *6 (W.D.N.Y. Feb. 4, 2013).  While the damage to Little's property is regrettable (if true), he

has not stated an actionable constitutional claim because New York state law provides him with

an adequate post-deprivation remedy here, i.e., § 9 of the Court of Claims Act.  *See id.* at *6

(finding that the plaintiff had not stated an actionable constitutional claim for destruction of

personal property, including legal documents, where New York state law provided the plaintiff

with an adequate post-deprivation remedy, despite the plaintiff alleging specific defendants who were responsible for his loss); *Edwards v. Bezio*, No. 08-CV-256, 2010 WL 681369, at *5 (N.D.N.Y. Feb. 24, 2010) (finding the plaintiff's constitutional claim that a correctional officer stole his stamps to be without merit because "New York provides a venue for challenging such appropriations" in Court of Claims Act § 9); *Jones*, 665 F. Supp. 2d at 401 (noting that New York Department of Correction procedure, in conjunction with Court of Claims Act § 9, "afford a prisoner all the process he is due because they allow him to recover the value of any property that may have been destroyed without authorization" (citation omitted)). While the Amended Complaint suggests that Little began this process, (*see* Am. Compl. 18), Little makes no allegations about the outcome of his administrative complaint.

Furthermore, while Little may be able to hold Defendants liable "under § 1983 if the confiscation of plaintiff's legal materials was in retaliation for the exercise of his constitutional rights, or if he was actually deprived of access to the courts," *Rodriguez v. Coughlin*, 795 F. Supp. 609, 613 (W.D.N.Y. 1992), Little makes no such allegation with respect to the search of his cell in his Amended Complaint, (*see* Am. Compl. 8–10). Moreover, even if Little had pleaded that the deprivation of these legal materials caused him harm, he has not identified any individual—even a "John Doe" defendant—who may be responsible and whose intent the Court may be able to evaluate for the purposes of assessing his harassment claims. *Robinson*, 2011 WL 31809, at *3 (discussing requirement that a plaintiff seeking to recover under § 1983 must name individual defendants). Plaintiffs' Amended Complaint fails to state a claim with respect to the cell searches that Plaintiffs allege.

To the extent that Plaintiffs' Amended Complaint alleges that Plaintiffs were subjected to strip searches that constituted cruel and unusual punishment, the Amended Complaint also fails

to state an actionable claim.  A strip search "will pass constitutional muster, even if the strip

[search] is conducted without probable cause, so long as the search is reasonable and not

abusive."  *Simmons*, 2013 WL 1290268, at 21 (internal quotation marks omitted).  "[I]n order to

maintain a federal claim, an inmate challenging a strip search must ultimately meet the burden of

establishing that the search at issue was unreasonable and for such a claim to survive a motion to

dismiss, the plaintiff must plead facts sufficient to give rise to a plausible inference that the

search was not reasonably related to legitimate penological interests."  *Id.* (citation omitted); *see*

*also Esquilin v. Schriro*, No. 13-CV-3724, 2014 WL 2795408, at *4 (S.D.N.Y. June 19, 2014)

(holding that the strip searches alleged by plaintiff did not rise to the level of a constitutional

violation, as plaintiff "[did] not allege any facts to suggest that the searches to which he was

subjected were an exaggerated response to legitimate penological concerns regarding security

and discipline" (internal quotation marks omitted)); *Tartt v. City of New York*, No. 12-CV-5405,

2014 WL 3388849, at *5 (S.D.N.Y. July 11, 2014) (noting that "[c]omplaints about strip

searches do not invariably (or even usually) constitute claims of harassment").[13]  Here, Plaintiffs

have not pleaded any facts to suggest that the search alleged was unreasonable or unrelated to

legitimate penological interests.  (*See* Am. Compl. 8.)  Furthermore, alleged "verbal harassment

during the [strip] search does not cause the search to become unconstitutional."  *Bowden v.*

*Duffy*, No. 13-CV-717, 2014 WL 338786, at *4 (S.D.N.Y. Jan. 30, 2014); *see also Vaughn v.*

*Strickland,* Nos. 12-CV-2696, 12-CV-3335, 12-CV-2995, 12-CV-3333, 2013 WL 3481413, at

*6-*7 (S.D.N.Y. July 11, 2013) (dismissing a Fourth Amendment claim where a prisoner alleged

---

[13] For the purposes of the instant motion, "it makes no difference whether a plaintiff is a convicted prisoner or a pre-trial detainee, as, in either case, the constitutionality of the search would depend on its reasonable connection to penological interests."  *Simmons*, 2013 WL 1290268, at *21 n.13 (citing *Covino v. Patrissi*, 967 F.2d 73, 78 n.4 (2d Cir. 1992)).

verbal abuse during an intrusive strip search).  Moreover, Plaintiffs have not pled that they exhausted their administrative remedies with respect to these searches prior to filing their Amended Complaint.  The Court strongly encourages them to do so prior to filing any additional complaints with respect to this issue.

Plaintiffs also claim to have suffered from verbal harassment by prison employees.  (*See* Am. Compl. 8–10.)  Plaintiffs do not alleged that such harassment caused them injury, however. (*See id.*)  Such "verbal harassment or profanity alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983."  *Hare v. Hayden*, No. 09-CV-3135, 2011 WL 1453789, at *7 (S.D.N.Y. Apr. 14, 2011) (alteration and internal quotation marks omitted); *see also Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (holding that "[t]he claim that a prison guard called Purcell names also did not allege any appreciable injury and was properly dismissed"); *Jermosen v. Coughlin*, 878 F. Supp. 444, 449 (N.D.N.Y. 1995) ("Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983.").

### d.  Use of Chemical Agent

To the extent that Plaintiff Little alleges an claim of excessive force related to the use of a chemical agent "which cause burning to [his] eyes and skin and also caused shortness of breath[]" during the time when he was held in pre-hearing detention on August 11, 2012, (Am. Compl. 10), such a claim may arise even if Little did not "suffer 'serious' or 'significant 'injury,' provided that he amount of force used is more than de minimis, or involves force that is repugnant to the conscience of mankind."  *United States v. Walsh*, 194 F.3d 37, 48 (2d Cir. 1999) (citations and internal quotation marks omitted) (quoting *Hudson v. McMillian*, 503 U.S.

1, 9–10 (1992)).  The same legal standard applies for such claims, regardless of whether the

plaintiff is a pretrial detainee or convicted offender.  *See id.*  This standard "has two

components—one subjective, focusing on the defendant's motive for his conduct, and the other

objective, focusing on the conduct's effect."  *Lewis v. Clarkstown Police Dept.*, No.

11-CV-2487, 2014 WL 1364934, at *3 (S.D.N.Y. Mar. 31, 2014) (internal quotation marks

omitted) (quoting *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000)).  The incident about which

Plaintiff Little complains may well satisfy the objective prong of this analysis.  *See Lewis*, 2014

WL 1364934, at *6 (noting that the use of pepper spray and similar chemical agents that inflict a

harm of only limited duration may still be deemed excessive depending on the context in which

it was used).  However the Court must also evaluate "whether force was applied in a good-faith

effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Id.* at *4

(internal quotation marks omitted) (citing *Hudson,* 503 U.S. at 6–7); *see also Santos v. New York

City Dep't of Correction*, No. 08-CV-8790, 2010 WL 1142066, at *7 (S.D.N.Y. Feb. 25, 2010),

*adopted by* 2010 WL 1142065 (S.D.N.Y. Mar. 25, 2010) (noting that the subjective part of an

excessive force inquiry "considers whether the charged official used force in service of a

legitimate penological objective" and that "[w]here no legitimate law enforcement or

penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may,

in some circumstances, be sufficient evidence of a culpable state of mind" (internal quotation

marks omitted).  Here, Plaintiffs' Amended Complaint fails to identify the individual responsible

for spraying Little with the chemical agent, or to provide a description of the incident from

which the court can infer that the chemical agent was used without any legitimate law

enforcement or penological purpose.  (Am. Compl. 10.)  Absent allegations that an individual is

responsible for the alleged misuse of chemical agent on Little, the Court cannot find Plaintiffs to

have satisfactorily plead this claim.  *See Robinson*, 2011 WL 318093, at *3  (noting that

plaintiffs suing under § 1983 "must name individual defendants who were personally involved in

the wrongdoing or misconduct" in order to plead their claim).  The Court dismisses this claim,

but encourages Plaintiff Little to identify the individual or individuals involved in this incident

with as much specificity as possible, if he chooses to refile his Complaint.

<u>e.  Minimum Standards Violations</u>

Plaintiffs' Amended Complaint also asserts violations of the New York City Board of

Correction's Minimum Standards.  Because these claims do not present a federal question, *see*

28 U.S.C. § 1331, and because Little does not allege that his citizenship is diverse with respect to

that of Defendants, *see id.* § 1332, "the Court may entertain [Plaintiff's New York City Board of

Corrections minimum standards] claim[] only pursuant to a theory of supplemental jurisdiction."

*Weslowski v. Zugibe,* — F. Supp. 2d —, 2014 WL 1612967, at *22 (S.D.N.Y. Mar. 31, 2014).

"[A] district court[ ] may decline to exercise supplemental jurisdiction over" related state law

claims that form part of the same case or controversy under Article III of the United States

Constitution "if . . . the district court has dismissed all claims over which it has original

jurisdiction."  28 U.S.C. § 1367(c)(3).  "Once a district court's discretion is triggered under §

1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and

comity in deciding whether to exercise jurisdiction."  *Kolari v. N.Y.-Presbyterian Hosp.,* 455

F.3d 118, 122 (2d Cir. 2006) (citation and internal quotation marks omitted) (quoting

*Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)).  "In weighing these factors, the

district court is aided by the Supreme Court's . . . guidance . . . that in the usual case in which all

federal-law claims are eliminated before trial, the balance of factors will point toward declining

to exercise jurisdiction over the remaining state-law claims."  *Id.* (alteration and internal

quotation marks omitted) (quoting *Cohill*, 484 U.S. at 350 n. 7).  Here, none of the factors that

the Supreme Court enunciated in *Cohill*—"judicial economy, convenience, fairness, [or]

comity"—militate against such dismissal, and there is no reason to believe that this is not

otherwise a "usual case in which all federal-law claims are eliminated before trial."  *Id.* (internal

quotation marks omitted).  Accordingly, Plaintiffs state-law minimum standard claims will be

dismissed without prejudice should Plaintiffs' federal claims be dismissed.

### 7.  Dismissal Without Prejudice

While Plaintiffs' Amended Complaint as filed fails to state a claim, it nonetheless raises

troubling allegations about the conditions of the facilities in which Plaintiffs are confined.  Our

nation's correctional systems currently supervise nearly seven million people.  *See* Press

Release, Bureau of Justice Statistics, Total U.S. Correctional Population Declined in 2012 for

Fourth Year (Dec. 19, 2013), *available at* http://www.bjs.gov/content/pub/press/cpus12pr.cfm

(noting that, at the end of 2012, "about 6.94 million people were supervised by the U.S. adult

correctional systems, which was the equivalent to about 1 in 35 U.S. adults (or 2.9 percent of the

adult resident population)").  The Constitution does not require these individuals be

"comfortable" while serving their time for their offences, *Rhodes*, 452 U.S. at 349, but our

nation's incarcerated population deserves to be housed under humane conditions, to have its

basic needs satisfied, and to have its health and safety protected during their incarceration.  *See*

*Overton*, 539 U.S. at 137.  Recent investigations raise serious questions about whether these

conditions are being met in the facility at issue here.  *See, e.g.*, U.S. Department of Justice,

CRIPA Investigation of the New York City Department of Correction Jails on Rikers Island

(Aug. 4, 2014), *available at* http://www.justice.gov/usao/nys/pressreleases/August14/

RikersReportPR/SDNY%20Rikers%20Report.pdf.  As Little has only amended his Complaint

once, and the other Plaintiffs have not yet amended their Complaint, the Court sees fit to dismiss Plaintiffs' case without prejudice, in keeping with the special solicitude afforded to pro se litigants.  *See Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) ("A *pro se* plaintiff . . . should be afforded an opportunity fairly freely to amend his complaint." (alteration in original) (internal quotation marks omitted) (citing *Holmes v. Goldin*, 615 F.2d 83, 85 (2d Cir.1980)); *Frasier v. General Electric Co.,* 930 F.2d 1004, 1007 (2d Cir. 1991) (noting that a district court "should not dismiss [an action] without granting leave to amend at least once when the complaint gives any indication that a valid claim may be stated" (internal quotation marks omitted)).

In deciding whether to file an amended complaint, Plaintiffs should bear in mind the deficiencies in the Amended Complaint discussed above.  Plaintiffs should be sure to clearly identify and serve all intended Defendants in this case, including any individuals, and naming John Doe defendants where necessary.  To the extent Plaintiffs wish to sue the City, Commissioner Schiro, Warden Ardo, or Warden Duffy, they should bear in mind that "there is no respondeat superior liability for [§] 1983 claims and, in the absence of any allegations of individual liability, dismissal is required."  *Jessup v. Armor Corr. Health Serv., Inc.*, No. 14-CV-950, 2014 WL 1768140, at *2 (E.D.N.Y. May 2, 2014) (citing *Minneci v. Pollard,* 132 S. Ct. 617, 625 (2012)); *Southerland,* 681 F.3d at 137.  That is, Plaintiffs cannot sue the City merely because of the conduct of its employees, nor individuals merely because of the conduct of those they supervise.  Plaintiffs should further consider whether they can plausibly allege a custom, policy or practice that would provide grounds for suit against the City.  *See Monell*, 436 U.S. at 690 ("Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or

executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.").

Lastly, Plaintiffs should note that the Prison Litigation Reform Act ("PLRA") requires the exhaustion of state administrative-grievance measures before a § 1983 claim may be filed in federal court. *See* 42 U.S.C. § 1997e(a).  In the Amended Complaint, Plaintiffs have indicated that they did not file a grievance where the claim arose, nor at any other jail, prison, or correctional facility, (*see* Am. Compl. 15), however, Plaintiffs also state that they "sent [a] letter to Warden Duffy; NYC Comptroller; [and the] Board of Correction," (*id*.)  In addition, Plaintiffs have included inmate grievance forms in which they raise some, but not all, of the issues that they include in the Amended Complaint.  (*Id.* at 18–22.)  Plaintiffs must first exhaust their state administrative-grievance measures for each of their claims prior to filing for redress with this court under § 1983.  *See Robinson v. Henschel*, No. 10-CV-6212, 2014 WL 1257287, at *10 (S.D.N.Y. Mar. 26, 2014) ("[T]he PLRA requires complete exhaustion in accordance with the administrative procedures within the New York State Department of Correctional Services . . . ." (internal quotation marks omitted)).

### III. CONCLUSION

For the reasons discussed above, Defendants' Motion To Dismiss is granted, and Little's Amended Complaint is dismissed without prejudice. Little may file an amended complaint within 30 days of this Order.

The other Plaintiffs must file their own amended complaint, which must include the signature of the Plaintiff to which it is to be attributed, within 30 days of this Order or risk an Order to Show Cause as to why their claims should not be dismissed for failure to prosecute. To be clear, if a Plaintiff cannot sign, and thereby join, another Plaintiff's amended complaint, he must submit his own signed amended complaint to the Court.

The Clerk of the Court is respectfully requested to terminate the pending Motion. (*See* Dkt. No. 56).

SO ORDERED.

Dated: September 29, 2014
      White Plains, New York

                                                KENNETH M. KARAS
                                                UNITED STATES DISTRICT JUDGE