UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CLIFTON LITTLE and ANTHONY ROMERO,

                  Plaintiffs,

      v.

MUNICIPAL CORPORATION, THE CITY OF
NEW YORK, COMMISSIONER DORA B.
SCHRIRO, WARDEN DUFFY, DEPUTY
WILLIAMS, CAPTAIN BERNADETTE
BROWN, WARDEN ARDO, OFFICER
ROMEIRO HILL, MS. JACKSON, OFFICER
CREGG, OFFICER CHAPMAN, CAPTAIN
VAUGHN, OFFICER STOKES, DEPUTY
WARDEN BAILEY, OFFICER YOUSIF,
OFFICER LEWIS, CAPTAIN WYNN, CAPTAIN
CIMATO, OFFICER ANTONIO BRAVO,
OFFICER MIKELL SPEARS, and CAPTAIN
ELIO ELIAS,

                  Defendants.

No. 12-CV-5851 (KMK)

OPINION & ORDER

---

Appearances:

Clifton Little
Dannemora, NY
*Pro Se Plaintiff*

Anthony Romero
Romulus, NY
*Pro Se Plaintiff*

Evan Schnittman, Esq.
Corporation Counsel of the City of New York
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Anthony Romero ("Romero") and Clifton Little ("Little," and together, "Plaintiffs"),

proceeding pro se, bring this Action against Municipal Corporation, the City of New York ("the

City"), Commissioner of the New York City Department of Correction Dora B. Schriro ("Commissioner Schriro"), Warden Duffy ("Duffy"), Deputy Williams ("Williams"), Captain Bernadette Brown ("Brown"), Warden Ardo ("Ardo"), Officer Romeiro Hill ("Hill"), Ms. Jackson ("Jackson"), Officer Cregg ("Cregg"), Officer Chapman ("Chapman"), Captain Vaughn ("Vaughn"), Officer Stokes ("Stokes"), Deputy Warden Bailey ("Bailey"), Officer Yousuf ("Yousuf"), Officer Lewis ("Lewis"), Captain Wynn ("Wynn"), Captain Cimato ("Cimato"), Officer Antonio Bravo ("Bravo"), Officer Mikell Spears ("Spears"), and Captain Elio Elias ("Elias," and collectively, "Defendants"), for violations of constitutional rights Plaintiffs suffered while incarcerated at the George R. Vierno Center ("GRVC") at Rikers Island.[1]  Both Romero and Little separately filed Second Amended Complaints, (Dkt. Nos. 68, 99), that are the subject of the instant Motion To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion").  (Dkt. No. 116.)[2]  For the reasons to follow, Defendants' Motion is granted in part and denied in part.

---

[1] The Court notes that Yousuf's name is spelled incorrectly as "Yousif" in Little's Second Amended Complaint.  The Court refers to Defendant Yousuf by the correct spelling of his name, despite the fact that the caption of this case reflects the misspelling.

[2] On November 7, 2014, Plaintiffs filed an Amended Complaint naming, among others, Jackson and Williams as additional Defendants.  (*See* Dkt. Nos. 67, 68.)  In a letter to the Court dated July 7, 2016, counsel for Defendants stated that "[the Department of Correction ('DOC')] is unable to waive service on behalf of Officer Jackson . . . [and] Deputy Williams . . . because DOC cannot specifically identify which individual Plaintiff Little and/or Plaintiff Romero intend to sue."  (Dkt. No. 115.)  The letter indicated that "[a]ccording to DOC's records, there are numerous correctional officers with the last name[] of Jackson, . . . and more than one Deputy Warden and/or Assistant Deputy Warden with the last name[] of Williams . . . ."  (*Id.*).  In a subsequent letter to the Court, counsel asserted that Romero had failed to provide additional identifying information for Defendants Jackson and Williams and thus sought dismissal of "all claims against Officer Jackson and Deputy Williams . . . based upon Plaintiff Romero's failure to prosecute."  (Dkt. No. 124.)  In a memo endorsement dated October 11, 2016, the Court denied the request to dismiss without prejudice and noted that "Defendants [did] not address Plaintiff's argument that he has provided the relevant timeframe, location, and underlying conduct at issue, and [did] not explain why, even with such information, Defendants [we]re still unable to adequately narrow the universe of potential defendants."  (Dkt. No. 141.)  Defendants were

# I.  Background

## A.  Factual Background

The following facts are drawn from Plaintiffs' Second Amended Complaints ("SACs") and are taken as true for the purpose of deciding the instant Motion.[3]

### 1.  Plaintiff Romero's Allegations

Romero alleges that he was subjected to excessive confinement on "about 15 to 20 [occasions]" when "for long periods of time" he was "locked in [his] cell[]."  (Second Am. Compl. of Anthony Romero ("Romero SAC") 3–4 (Dkt. No. 68).)  Specifically, Romero asserts that on July 11, 2012, he and other inmates "were held and locked in [their] cells [for] approximately 23 hours for no apparent reason."  (*Id.* at 7.)

Romero asserts that 4-B Housing Unit ("4-B") "started having sewage back[]ups and the housing area would get flooded with feces[] [and] urine," (*id.* at 3), and he was forced to wait in the flooded cell while Defendants "fix[ed] the problem," (*id.* at 4).  Romero was denied "a linen [e]x[]change so that [he] could receive clean sheets, blankets, [and] towels," and he and other inmates "had to clean [their] own property . . . without the help of a washer or dryer."  (*Id.*)

---

instructed that they could respond to the Court's endorsement by October 29, 2016, but Defendants did not do so.  (*Id.*)  Thus Defendants Jackson and Williams have yet to be served and therefore do not join in Defendants' instant Motion.

On November 7, 2014, Municipal Corporation and the City of New York were terminated as parties to the Action.  (*See* Dkt. (minute entry Nov. 7, 2014).)

[3] In his SAC, Plaintiff Romero lists Timothy Beckman, Terry Patterson, Jalah Knight, and Martin Concepcion as "Parties To This Action."  (Second Am. Compl. of Anthony Romero 1 (Dkt. No. 68).)  In its prior Opinion & Order, the Court specified that "Plaintiffs must file their own amended complaint, which must include the signature of the Plaintiff to which it is to be attributed."  (Op. & Order 41 (Sept. 29, 2014) (Dkt. No. 61).)  The Court further clarified that "if a Plaintiff cannot sign, and thereby join, another Plaintiff's amended complaint, he must submit his own signed amended complaint to the Court."  (*Id.*)  As Beckman, Patterson, Knight, and Concepcion have neither signed another Plaintiff's amended complaint, nor submitted their own, the claims of these Plaintiffs are dismissed.

Romero was not reimbursed for the property which was damaged during the flooding.  (*Id.* at 7.)
As a result of the "dirty environment" to which Romero was subjected, he "developed . . . bad
allergies . . . [and] skin irr[i]tation."  (*Id.* at 4.)

Romero and other inmates at GRVC "were strip searched and *all* of [their] property [was]
taken from [them]."  (*Id.* at 3.)  Additionally, Romero was "without food for . . . about 14 or 16
hours."  (*Id.*)[4]

Romero also asserts that he was functionally denied access to the law library because "if
[he] had a call-out . . . [he] had to decide which one [he] wanted to go to or which one was the
most important that day," as the available resources were offered at the same time.  (*Id.* at 4.)
Consequently, Romero "wasn't able to research [his] [criminal] case properly."  (*Id.* at 5.)

2.  Plaintiff Little's Allegations[5]

On March 3, 2012, Little's cell in 4-B was flooded when a "slop sink" overflowed and he
was denied access to his cell to remove his property from the floor to ensure it was not damaged.
(*See* Second Am. Compl. of Clifton Little ("Little SAC") ¶¶ 3–8 (Dkt. No. 99).)[6]  Little was
subsequently confined to the cell flooded with water "filled with urine, feces[,] and other
unidentified substances," with "no ventilation and a window that would not open."  (*Id.* ¶ 15.)

---

[4] It is unclear from Romero's SAC the dates on which the alleged strip searches and
withholding of food took place.

[5] Defendants do not move to dismiss Plaintiff Little's claims regarding First Amendment
retaliation, deliberate indifference to his medical needs stemming from a March 3, 2012 asthma
attack, property damage, and excessive force arising from an incident on February 15, 2013.
(*See* Mem. of Law in Supp. of City Defs.' Mot. To Dismiss Pl. Romero's Second Am. Compl.,
in its Entirety, and To Partially Dismiss Pl. Little's Second Am. Compl.) 1 n.1 (Dkt. No. 118).)
Therefore, the facts pertaining to such claims are not included herein.

[6] Little's SAC consists of an Amended Complaint form, along with a handwritten
attachment with a section labelled "Facts of Claim."  Paragraph numbers refer to the handwritten
attachment, at ECF pages numbered 6–20.

Following the flooding, Little was escorted to the prison gym, where "the windows were open and the air was extremely cold." (*Id.* ¶ 19.)  Little requested that the windows be closed and that he be given a blanket, but was denied both requests.  (*Id.* ¶¶ 19–20.)  During this time, Little alleges that he alerted Defendant Elias that he had not eaten for 13 hours, but was told he could eat at 6 a.m. when breakfast was served.  (*Id.* ¶ 21.)  Little was returned to his flooded cell, where he discovered his sink and toilet were not working.  (*Id.* ¶ 23.)  At 6 a.m., 18 hours after Little's previous meal, inmates were "issued half a pint of 1% milk and [four] slices of hard molded bread."  (*Id.* ¶ 25.)

On or about April 4, 2012, Little was "reclassified and placed on a Security Risk Group ['SRG')] list" by Defendant Vaughn because he was "an alleged 'active' gang member."  (*Id.* ¶ 28.)  Little asserts that such action was taken "without conducting any form of an investigation or providing [him] any form of a notice."  (*Id.*)  As a result of Little's reclassification, he lost his job as an inmate hair stylist.  (*Id.* ¶ 29.)  When Little sought to file a grievance in response, he was told "being fired was not a grievable issue" and was denied his request for a grievance number for the grievances he eventually filed in connection with both losing his job and the alleged inhumane conditions due to the flooding of 4-B.  (*Id.* ¶ 30.)

Little also asserts that Defendants Vaughn, Stokes, and Chapman denied Little's right of access to the courts and restricted him from using the law library.  (*Id.* ¶¶ 31–36, 48.)  "Due to this denial of legal services[,] [Little] was unable to file any Article 78 petition challenging" his reclassification as SRG and his property damage.  (*Id.* ¶ 34.)  Little further alleges that the denial "affected [his] criminal proceedings," (*id.* ¶ 35), and that "[h]ad it not been for [Defendant] Chapman's denial of law library services, [Little] would not have been convicted or faced a trial," (*id.*).

On August 11, 2012, Little alleges that Defendant Yousuf sprayed Little with "'O.C.' ([c]hemical [a]gent)" and he was "handcuffed . . . and taken to intake and placed in a holding pen, . . . until he was seen by medical staff for the exposure to 'O.C.'" (*Id.* ¶ 37.)  Before being seen by medical staff, Defendant Wynn told Little "when medical calls you in you better say you have no injuries because if you don't hold it down and my officer gets in trouble you will get fucked up." (*Id.* ¶ 38 (internal quotation marks omitted).)  "[O]ut of fear," Little told medical staff "he had no injuries and refuse[d] to sign any documents." (*Id.* ¶ 39.)

On August 12, 2012, Little "was handcuffed, placed in a [Department of Correction ('DOC')] van and taken from GRVC to [Otis Bantum Correctional Center ('OBCC')] for [prehearing detention ('PHD')] in OBCC's [Central Punitive Segregation Unit ('CPSU')] area under the recommendation of [D]efendant Wynn and approval of [D]efendant Duffy." (*Id.* ¶ 42.) Little "remained in a single cell with no vent[i]l[]ation for a total of seven days without any of his personal property." (*Id.*)  Little was not given a hearing, notice of infraction, or misbehavior report in relation to the incident, and suffered "extreme headaches and anxiety" as a result of this confinement. (*Id.*)[7]

B.  Procedural History

Due to the age and procedural complexity of the Action, the Court recounts only the procedural history relevant to the instant Motion.[8]

---

[7] Little's SAC appears to omit ¶¶ 43–44, although the pages are consecutively numbered, suggesting that there is an error in the numbering of paragraphs and not an omission of information. (*See* Little SAC ¶¶ 42, 45.)

[8] For a full recitation of the procedural history of the case, see the Court's prior Opinion & Order of September 29, 2014. (*See* Op. & Order 4–6.)

In an Opinion & Order ("Opinion") dated September 29, 2014, the Court granted Defendants' motion to dismiss and dismissed Plaintiffs' Amended Complaint without prejudice. (Op. & Order ("Opinion") 41 (Dkt. No. 61).)  In doing so, the Court granted Plaintiffs permission to file a second amended complaint.  (*Id.*)  The Court's Opinion further instructed that "[t]he other Plaintiffs must file their own amended complaint, which must include the signature of the Plaintiff to which it is to be attributed" and that "if a Plaintiff cannot sign, and thereby join, another Plaintiff's amended complaint, he must submit his own signed amended complaint to the Court."  (*Id.*)  On November 10, 2014, Plaintiff Romero filed his signed SAC. (Dkt. No. 68.)

In an attempt to comply with the Court's order, Little filed an Amended Complaint on November 19, 2014, naming John and Jane Doe Defendants.  (Dkt. No. 72.)  On January 15, 2015, the Court directed Defendants to identify the John and Jane Doe Defendants who appear in Little's Amended Complaint pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997).  (*See* Dkt. No. 76.)[9]  By letter dated March 9, 2015, Defendants informed the Court that they had partially complied with the *Valentin* Order and requested an extension of time to continue their attempt to ascertain the identities of certain John Doe Defendants, (*see* Dkt. No. 78), which the Court granted on March 10, 2015, (Dkt. No. 79).  By letter dated March 30, 2015, Defendants informed the Court that they "ha[d] made a genuine effort to comply with the Court's *Valentin* Order, and . . . ha[d] been working with [DOC] employees to determine the remaining identi[t]ies of the John [or Jane] Doe Defendants."  (Dkt. No. 80.)  Defendants sought more information from Little to ascertain the identities of two (or more) John and/or Jane Doe

---

[9] In *Valentin*, the Second Circuit held that a pro se litigant is entitled to assistance from the district court in identifying a defendant.  121 F.3d at 75.

Defendants, (*id*. at 2), and on April 1, 2015, the Court ordered that Little supply certain information towards that end, (Dkt. No. 82).  Little responded by letter dated April 14, 2015, (Dkt. No. 83), but was unable to provide information sufficient to allow Defendants to identify the remaining John Does, (Dkt. No. 84).  Several letters were exchanged between the Parties, but Little did not provide any additional information as to the identities of the remaining John Does. (Dkt. Nos. 87–88, 90.)  On February 9, 2016, the Court provided Little with one final opportunity to provide more information to allow Defendants to identify the remaining John Does, ordering Little to provide the information by March 1, 2016, or risk dismissal of the claims against those Defendants, (Dkt. No. 94), but Little never provided the requested information.  On March 18, 2016, the Court dismissed the claims against the remaining John Does, without prejudice, pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute.  (Dkt. No. 95.)  The Court instructed Little to file a Second Amended Complaint naming the John Doe Defendants identified by Defendants in their March 9, 2015 letter.  (*Id.* at 2.)

On May 2, 2016, Little filed his SAC.  (Dkt. No. 99.)  On July 8, 2016, Defendants filed the instant Motion and accompanying papers. (Dkt. Nos. 116–20).  On August 22, 2016, Defendants' counsel filed a letter requesting that the Court deem the Motion as submitted on behalf of Defendants Lewis, Vaughn, Hill, Wynn, Bravo, Cimato, Cregg, Stokes, and Bailey, (Dkt. No. 131), and the Court granted the request the following day, (Dkt. No. 132).

On October 3, 2016, Romero filed his opposition, (Dkt. No. 136), and on November 2, 2016, Little filed his opposition, (Dkt. No. 144).  On November 9, 2016, Defendants' counsel filed a letter requesting that the Court deem the Motion as submitted on behalf of Defendant Yousuf, (Dkt. No. 147), and the Court granted the request on the same day, (Dkt. No. 148).  In a letter to the Court dated November 16, 2016, Little requested reconsideration of the Court's

decision to consider the Motion submitted on behalf of Defendant Yousuf, and additionally requested that the Court grant default judgment against Defendants Spears, Hill, Brown, Bailey and Cregg.  (Dkt. No. 149).  Defendants filed a response to Little's letter on November 23, 2016, (Dkt. No. 150), and the Court denied Little's request on November 28, 2016, (Dkt. No. 152).  On December 2, 2016, Defendants filed their reply to Plaintiffs' opposition to the Motion.  (Dkt. No. 154.)[10]

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and internal quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the

---

[10] On February 13, 2017, Defendants requested a stay of discovery pending the Court's determination on the instant Motion.  (Dkt. No. 161.)  The Court granted the request on February 27, 2017.  (Dkt. No. 162.)  In a letter dated March 10, 2017, Little requested that the Court reconsider its decision to stay discovery, (Dkt. No. 163), and Defendants responded in a letter on March 21, 2017, (Dkt. No. 164).  The Court denied Little's request for reconsideration on March 21, 2017.  (Dkt. No. 165.)

complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that

is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from

conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679

("Determining whether a complaint states a plausible claim for relief will . . . be a context-

specific task that requires the reviewing court to draw on its judicial experience and common

sense.  But where the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader

is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P.

8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the

hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery

for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and

"draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992

F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145

(2d Cir. 2012).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must

confine its consideration to facts stated on the face of the complaint, in documents appended to

the complaint or incorporated in the complaint by reference, and to matters of which judicial

notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)

(internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317

(S.D.N.Y. 2016) (same).

Because Plaintiffs are proceeding pro se, the Court construes their "submissions . . .

liberally" and interprets them "to raise the strongest arguments that they *suggest*."  *Triestman v.*

*Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks omitted).  Furthermore, for the same reason, it is appropriate to consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (noting that a court may consider "factual allegations made by a pro se party in his papers opposing the motion" (italics omitted)); *Rodriguez v. Rodriguez*, No. 10-CV-891, 2013 WL 4779639, at *1 (S.D.N.Y. July 8, 2013) ("Although the [c]ourt is typically confined to the allegations contained within the four corners of the complaint, when analyzing the sufficiency of a pro se pleading, a court may consider factual allegations contained in a pro se litigant's opposition papers and other court filings." (citation and internal quotation marks omitted)).

B.  Analysis

1.  Conditions of Confinement and Use of Chemical Agent

In its prior Opinion, the Court instructed that the status of a plaintiff as either a convicted prisoner or pretrial detainee dictated whether his conditions of confinement were analyzed under the Eighth or Fourteenth Amendment.  (*See* Opinion 14 n.7 (citing *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009).)  The Court encouraged Plaintiffs to include in their Amended Complaint "whether they were convicted prisoners or pretrial detainees at the time of the relevant incidents," (*id.*), but noted that "[c]laims for deliberate indifference to a . . . serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment," (*id.* (citing

*Caiozzo*, 581 F.3d at 72)).  In their SACs, both Romero and Little assert that they were pretrial detainees at the time the alleged violations occurred, thus their claims are covered by the Eighth Amendment.  (*See* Romero SAC 8; Little SAC ¶ 1.)

Under the Eighth Amendment standard, a plaintiff is required to prove "(1) a deprivation that is objectively, sufficiently serious that he was denied the minimal civilized measure of life's necessities[;] and (2) a sufficiently culpable state of mind on the part of the defendant official, such as deliberate indifference to inmate health or safety."  *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (internal quotation marks omitted) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  Thus, under the Eighth Amendment a plaintiff has to satisfy both an objective prong and subjective prong.

In the more than two years since the Court issued its prior Opinion, the relevant jurisprudence changed dramatically.  First, in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), the Supreme Court held that for excessive force claims brought pursuant to the Due Process Clause of the Fourteenth Amendment, "a pretrial detainee must show only that the force purposefully or knowingly used against him was objectively unreasonable."  *Id.* at 2473; *see also id.* at 2472 ("[I]f the use of force is deliberate—i.e., purposeful or knowing—the pretrial detainee's claim may proceed." (italics omitted)).  Thus, the Supreme Court concluded that plaintiffs bringing excessive force claims under the Fourteenth Amendment do not need to satisfy the subjective intent component of claims brought under the Eighth Amendment.

Two months later, the Second Circuit decided *Willey v. Kirkpatrick*, 801 F.3d 51 (2d Cir. 2015), addressing plaintiff-appellant Willey's Eighth Amendment conditions-of-confinement claims.  Willey alleged three periods of confinement in unsanitary conditions: one in which "officers placed him in solitary confinement with a Plexiglas shield restricting the airflow to his

small cell and then incapacitated his toilet, so that he was reduced to breathing a miasma of his own accumulating waste," and two occurrences in which he was "detain[ed] in an observation cell whose walls and mattress were smeared with feces and stained with urine." *Id.* at 55. Willey also alleged that he was served a week's worth of nutritionally inadequate meals. *Id.* The district court found that Willey's claims could not survive summary judgment because among other reasons, he was "vague as to the dates that the alleged [toilet] shut-off occurred, and ha[d] made conflicting allegations about the duration" and "Willey ha[d] not claimed that he suffered sickness or other ill effects as a result of the malodorous atmosphere caused by the [toilet] shut-off." *Willey v. Kirkpatrick*, No. 07-CV-6484, 2013 WL 434188, at *9 (W.D.N.Y. Feb. 4, 2013), *vacated and remanded by* 801 F.3d 51 (2d Cir. 2015). Vacating the decision of the district court, the Second Circuit held that the proper inquiry for a conditions-of-confinement claim does not involve "any bright-line durational requirement" or "some minimal level of grotesquerie." *Willey*, 801 F.3d at 68. Rather, the "analysis must consider both the duration and the severity of an inmate's experience of being exposed to unsanitary conditions." *Id.*; *see also id.* ("The severity of an exposure may be less quantifiable than its duration, but its qualitative offense to a prisoner's dignity should be given due consideration.").[11] The Second Circuit further held that "serious injury is unequivocally not a necessary element of an Eighth Amendment claim." *Id.*

Finally, and most germane to the instant Action, earlier this year, the Second Circuit decided *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017), a case brought by 20 individual

---

[11] In regard to his nutritionally inadequate food claim, the Second Circuit found that "Willey's claim [was] not that all restricted diets are unconstitutional, but that the particular food he received was" and therefore he had adequately alleged "that *his* restricted diet was unusually unhealthy." *Willey*, 801 F.3d at 69.

plaintiffs, each of whom was detained in a temporary holding facility for between 10 and 24 hours.  *Id.* at 23.  The plaintiffs alleged that they were subjected to degrading conditions of confinement, including overcrowding, unusable toilets, inadequate sanitation, infestation, and inadequate nutrition, among other complaints.  *Id.*  The district court, in granting summary judgment to the defendants, held that "occasional and temporary deprivations of sanitary and temperate conditions, *without more*, do not constitute a sufficiently serious deprivation under the Eighth Amendment to constitute punishment," and that "the evidence fail[ed] to establish [that] any [p]laintiff was regularly denied his or her basic human needs or was exposed to conditions that posed an unreasonable risk of serious damage to his or her future health."  *Cano v. City of New York*, 119 F. Supp. 3d 65, 74 (E.D.N.Y. 2015), *aff'd in part and vacated in part by Darnell*, 849 F.3d 17.  The district court determined that the fact that no plaintiff had been exposed to the complained of conditions for more than 24 hours and the lack of any actual serious injury warranted the conclusion that no plaintiff had suffered an objective constitutional violation.  *See id.* at 73 ("[The] [p]laintiffs only complain of such issues for a short period of time—an average of [10] to [24] hours—with nothing more."); *id.* at 75 ("[T]he uncontroverted evidence establishes that no [p]laintiff was *regularly* deprived access to a toilet."); *id.* at 77 ("Here, not a single [p]laintiff was exposed to urine, feces, and/or vomit for anything more than a limited period of time . . . ."); *id.* at 82 ("Most [p]laintiffs did not seek any sort of medical treatment and none of the [p]laintiffs provide evidence of having suffered any long term physical or emotional harm . . . .").  As to the subjective prong, the district court held that no reasonable jury could conclude that the defendants knew about conditions that posed an excessive risk to the plaintiffs' health and safety, and that the defendants, at most, were merely negligent.  *Id.* at 84.

14

On appeal, the Second Circuit vacated the judgment of the district court, finding that the district court had "essentially ruled that no set of conditions, no matter how egregious, could state a due process violation if the conditions existed for no more than [10] to [24] hours" and that such ruling "was error." *Darnell*, 849 F.3d at 37.  Instead, the court held "conditions of confinement cases must be evaluated on a case-by-case basis according to severity and duration." *Id.*

As to the subjective deliberate indifference prong—which the Second Circuit suggested might be "better classified as a 'mens rea prong' or 'mental element prong,'" *id.* at 29 (italics omitted), the court held that "after *Kingsley*, it is plain that punishment has no place in defining the mens rea element of a pretrial detainee's claim under the Due Process Clause," *id.* at 35 (italics omitted).  "[T]he Due Process Clause can be violated when an official does not have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm." *Id.*  The Second Circuit thus overruled *Caiozzo* "to the extent that it determined that the standard for deliberate indifference is the same under the Fourteenth Amendment as it is under the Eighth Amendment." *Id.*  Thus, to establish a claim for deliberate indifference to conditions of confinement under the Due Process Clause of the Fourteenth Amendment, a pretrial detainee must show "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id*.  "In other words, the 'subjective prong' (or 'mens rea prong') of a deliberate indifference claim is defined objectively." *Id.* (italics omitted).

The Court recognizes that this recent body of case law has significantly altered the judicial landscape since the Parties submitted their briefing on the instant Motion.  Therefore, in light of the Second Circuit's decision in *Darnell*, Defendants' Motion To Dismiss Plaintiffs' conditions-of-confinement claims is denied without prejudice.  Should Defendants wish to file a renewed Motion that addresses Plaintiffs' allegations of excessive confinement, unsanitary housing conditions, denial of food, exposure to extreme temperatures, and denial of laundry services, they may file a pre-motion letter with the Court detailing the merits of any such motion.

Additionally, as the Supreme Court's decision in *Kingsley* revised the applicable standard for excessive force claims, Defendants' Motion is dismissed without prejudice as to the claims for the use of chemical agent "O.C.," (Little SAC ¶¶ 37–39), as well as Little's allegations that he was "pushed in the back by [Defendant] Spears and landed on his hands and knees into the water filled with bodily waste," (*id.* ¶ 17).  Defendants may address these claims in any renewed motion to dismiss.

To the extent that Defendants' Motion has not been affected by the decisions detailed above, the Court now turns to whether Plaintiffs have sufficiently plead constitutional violations in connection with their denial of access to the courts, Romero's claim that he was strip searched, and Little's claims regarding his prisoner classification and denial of work assignment.

### 2.  Denial of Access to the Courts and Law Library Access

Both Romero and Little assert various claims regarding denial of their access to the courts, restriction of law library services, and Defendants' failure to maintain an adequate law library.  (Romero SAC 4–5; Little SAC ¶¶ 31–36, 48.)  It is axiomatic that prisoners "have a constitutional right of access to the courts," *Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004) (internal quotation marks omitted), and that pro se inmates have a right to assistance in the form

16

of "adequate law libraries or adequate assistance from persons trained in the law," *Bounds v. Smith*, 430 U.S. 817, 828 (1977).  However, impairment of an inmate's "litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  *Pollack v. Holanchock*, No. 10-CV-2402, 2012 WL 1646893, at *2 (S.D.N.Y. May 10, 2012) (internal quotation marks omitted).

"To establish a constitutional violation based on denial of access to the courts, a plaintiff must show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in an *actual injury* to the plaintiff."  *Bellezza v. Holland*, 730 F. Supp. 2d 311, 314 (S.D.N.Y. 2010) (emphasis added) (internal quotation marks omitted); *see also Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("[A] plaintiff must allege that the defendant took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim." (alteration and internal quotation marks omitted)); *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997) ("In order to establish a violation of a right of access to courts, a plaintiff must demonstrate that a defendant caused actual injury, i.e., took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim." (alteration, italics, citation, and internal quotation marks omitted)).  For example, a plaintiff could show that he "has been unable to file a complaint or has had a complaint dismissed for failure to observe a technicality" as a result of the actions of the defendant.  *Benjamin v. Fraser*, 264 F.3d 175, 184 (2d Cir. 2001).

Romero alleges that due to scheduling conflicts, he "had to decide . . . [whether law library access] was the most important [call-out] that day," and therefore "wasn't able to research [his] case properly."  (Romero SAC 4–5.)  Romero does not appear to allege any actual *restriction* of his access to the law library, but rather that he was forced to make a decision to spend his time in the law library or elsewhere.  Such allegations do not rise to the level of

17

unconstitutional obstruction of access to the courts.  However, even were Romero to have

sufficiently pleaded that he was denied access, his claim is deficient because it does not allege

any harm caused to him.  Romero asserts that his inability to "research [his] case properly" "was

very frustrating," (*id.* at 5), but does not plead an actual injury, *Monsky*, 127 F.3d at 247 ("In

order to establish a violation of a right of access to courts, a plaintiff must demonstrate that a

defendant caused actual injury, i.e., took or was responsible for actions that hindered a plaintiff's

efforts to pursue a legal claim." (alterations, italics, citations, and internal quotation marks

omitted)).  Accordingly, Romero's allegations regarding access to the law library are dismissed

for failure to state a claim.

Little alleges that Defendant Chapman denied him access to the law library on multiple

occasions at the request of Defendants Stokes and Vaughn.  (Little SAC ¶¶ 31–36.)  Little avers

that "[d]ue to this denial . . . [he] was unable to file any Article 78 petition" in relation to his

reclassification as SRG and damage to his property.  (*Id.* ¶ 34.)  Little further asserts that the

denial resulted in his inability "to do any research to respond to . . . [D]efendant[s'] motion to

dismiss, dated Nov[ember] 12, 2013," (*id.*), and "affected [P]laintiff's criminal proceedings," (*id.*

¶ 35).  Had it not been for Defendant Chapman's refusal to allow him to use the law library,

Little asserts he "would not have been convicted or faced a trial," (*id.*), and that "had [he] been

provide[d] the legal materials he needed to further prosecute his property claim, he would have

prosecuted his claim and succeed[ed]," (*id.* ¶ 48).  While the Court cannot yet discern at this

stage of the litigation whether the outcomes of Little's proceedings would have been different

had Defendants not restricted access to the law library or failed to provide legal materials, Little

has identified "an 'actual injury' in a specific legal action resulting from the alleged

deprivation." *Collins v. Goord*, 438 F. Supp. 2d 399, 418 (S.D.N.Y. 2006).  Little's claimed

inability "to file any Article 78 petition" or "do any research to respond to . . . Defendant[s']
motion to dismiss," (Little SAC ¶ 34), are precisely the kind allegations that survive a motion to
dismiss, *compare Ifill v. Goord*, No. 03-CV-355S, 2005 WL 2126403, at *8 (W.D.N.Y. Sept. 1,
2005) (dismissing an access-to-courts claim because the plaintiff did *not* allege the defendants
"prevented him from filing a claim or responding to a dispositive motion, or caused him to miss
a deadline or otherwise fail to comply with an order from any court"); *Odom v. Poirier*, No. 99-
CV-4933, 2004 WL 2884409, at *9 (S.D.N.Y. Dec. 10, 2004) (dismissing an access-to-
courts claim because "[the] plaintiff's conclusory allegations that the defendants caused him
irreparable harm in his ability to litigate . . . state and federal claims . . . or that the loss of [his]
legal materials caused him irreparable harm to exercise his rights of access to the courts are
simply insufficient to state a claim" (internal quotation marks omitted)); *Gill v. Pact Org.*, No.
95-CV-4510, 1997 WL 539948, at *5 (S.D.N.Y. Aug. 28, 1997) (dismissing access-to-
courts claim based on failure to provide photocopying and law books where the plaintiff
"offer[ed] no specific references to injury" and did not "explain any manner in which he or any
of his claims were prejudiced") *with Amaker v. Goord*, No. 98-CV-3634, 2000 WL 718438, at *3
(S.D.N.Y. June 5, 2000) (finding the plaintiff's allegation "that he was prevented from filing a
timely appeal in an Article 78 proceeding because the defendants kept him from passing legal
papers to his family for purposes of submission to the court" was sufficient to survive a motion
to dismiss).  At this stage of the litigation, Plaintiff need allege "only enough facts to state a
claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  However, as explained
below, because Little has failed to exhaust his administrative remedies with respect to this claim,
Defendants' Motion To Dismiss this claim is granted.

### 3.  Searches

With respect to Romero's allegations that he was strip searched, (*see* Romero SAC 3), Romero fails to state a claim.  "[A]n inmate challenging a strip search must ultimately meet the burden of establishing that the search at issue was unreasonable and for such a claim to survive a motion to dismiss, the plaintiff must plead facts sufficient to give rise to a plausible inference that the search was not reasonably related to legitimate penological interests."  *Simmons v. Cripps*, No. 12-CV-1061, 2013 WL 1290268, at *21 (S.D.N.Y. Feb. 15, 2013) (report & recommendation) (citation omitted).  Plaintiff Romero has failed to plead any facts beyond the single conclusory statement that such a search occurred.  Thus the court cannot determine whether the search (or searches) was "an exaggerated response to legitimate penological concerns regarding security and discipline."  *Esquilin v. Schriro*, No. 13-CV-3724, 2014 WL 2795408, at *4 (S.D.N.Y. June 19, 2014) (internal quotation marks omitted).  Moreover, Romero fails to name the individual or individuals who conducted the alleged search or when the search occurred.  (*See* Romero SAC 3 ("We were strip searched and *all* of our property [was] taken from us.").  Accordingly, Romero's claims are dismissed.

### 4.  Classification of Prisoners and Denial of Work Assignment

Little's claims as to his classification as SRG and dismissal from his position as an inmate hairstylist are deficient for the reasons set forth in the Court's prior Opinion.  (*See* Opinion 24–28.)  The Court declines to revisit these unaltered allegations, because as previously noted, Little "does not allege conditions so extreme as to amount to punishment."  (*Id.* at 27 (noting that Little's classification and termination from his prison job do not amount to a

constitutional violation and collecting cases).)  As Little has failed to plead additional facts to

bolster his allegations of unconstitutional conduct, his claims are dismissed.[12]

<h3 align="center">5.  Failure to Exhaust Administrative Remedies</h3>

Defendants also move to dismiss Romero's SAC on the grounds that Romeo failed to

exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA").

(Mem. of Law in Supp. of City Defs.' Mot. To Dismiss Pl. Romero's SAC, in its Entirety, and to

Partially Dismiss Pl. Little's SAC ("Defs.' Mem.") 20–26 (Dkt. No. 118).)  Defendants argue

that Little failed to exhaust his administrative remedies in respect to his claim that he was denied

access to the courts.  (*Id.* at 24–25.)  The PLRA provides that "[n]o action shall be brought with

respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as

are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement applies to all

personal incidents while in prison, *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding

exhaustion is required for "all inmate suits about prison life, whether they involve general

circumstances or particular episodes"); *see also Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir.

2012) (same), and includes actions for monetary damages despite the fact that monetary damages

are not available as an administrative remedy, *Booth v. Churner*, 532 U.S. 731, 741 (2001)

(holding exhaustion is required "regardless of the relief offered through administrative

procedures").  Moreover, the PLRA mandates "'proper exhaustion'—that is, 'using all steps that

the agency holds out, and doing so properly,' . . . [which] entails . . . 'completing the

---

[12] The same is true for Little's unamended allegations that his being "force[d] to wear a lime green prison jumpsuit on the visiting floor of GRVC . . . caused [him] discomfort and embarrassment."  (Little SAC ¶ 60.)  The Court previously found that such allegations do not rise to a level as to constitute cruel and unusual punishment.  (*See* Opinion 28.)

administrative review process in accordance with the applicable procedural rules.'"  *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (alteration omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88, 90 (2006)); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

Prisoners in the custody of DOC must exhaust all levels of the Inmate Grievance Program ("IGP") process even if they do not receive a response from the Inmate Grievance Resolution Committee ("IGRC") or superintendent.  *See Dabney v. Pegano*, 604 F. App'x 1, 4–5 (2d Cir. 2015) ("The IGP provides a clear timeline for appealing grievances to the [Central Office Review Committee ('CORC')], which applies even when the prisoner does not receive a timely decision from the IGRC or a superintendent.  [The] [p]laintiff therefore had an unimpeded path to the CORC, notwithstanding his claims that the . . . grievance clerk failed to process his complaint and that the . . . superintendent ignored his appeal." (citation omitted)).  Thus, if a plaintiff does not receive a response from the IGRC, he normally must file an appeal with the prison superintendent and then with the CORC to fully exhaust his grievance.  Indeed, the IGP explicitly states that "matters not decided within the time limits may be appealed to the next step."  7 N.Y.C.R.R. § 701.6(g)(2); *see also id.* § 701.8(g) (same for expedited harassment grievances).

The PLRA does, however, "contain[] its own, textual exception to mandatory exhaustion."  *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016).  The Supreme Court recently explained:

> Under § 1997e(a), the exhaustion requirement hinges on the "availab[ility]" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.  And that limitation on an inmate's duty to exhaust . . . has real content. . . .  [A]n inmate is required to exhaust those, but only

those, grievance procedures that are "capable of use" to obtain "some relief for the
action complained of."

*Id.* at 1858–59 (quoting *Booth*, 532 U.S. at 738).

There are "three kinds of circumstances in which an administrative remedy, although
officially on the books, is not capable of use to obtain relief." *Id.* at 1859.  First, an
"administrative procedure is unavailable when . . . it operates as a simple dead end—with
officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.*
Second, "an administrative scheme might be so opaque that it becomes, practically speaking,
incapable of use.  In this situation, some mechanism exists to provide relief, but no ordinary
prisoner can discern or navigate it." *Id.*  Third, an administrative remedy may be unavailable
"when prison administrators thwart inmates from taking advantage of a grievance process
through machination, misrepresentation, or intimidation." *Id.* at 1860.  These three
circumstances "do not appear to be exhaustive," *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d
Cir. 2016), but they do "guide the Court's inquiry," *Khudan v. Lee*, No. 12-CV-8147, 2016 WL
4735364, at *5 (S.D.N.Y. Sept. 8, 2016).

A plaintiff need not plead that one of these three circumstances exists or that he did in
fact exhaust his administrative remedies because the "[f]ailure to exhaust administrative
remedies is an affirmative defense under the PLRA, not a pleading requirement." *Williams*, 829
F.3d at 122.  Defendants bear the burden of proving that Romero and Little failed to exhaust
available administrative remedies.  *McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003)
("[The] defendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion
with particularity."); *see also Williams*, 829 F.3d at 122 ("[I]nmates are not required to specially
plead or demonstrate exhaustion in their complaints." (internal quotation marks omitted)).  Thus,
a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted only if

"nonexhaustion is clear from the face of the complaint."  *Lovick v. Schriro*, No. 12-CV-7419,

2014 WL 3778184, at *4 (S.D.N.Y. July 25, 2014) (alterations and internal quotation marks

omitted); *see also Lee v. O'Harer*, No. 13-CV-1022, 2014 WL 7343997, at *3 (N.D.N.Y. Dec.

23, 2014) ("Dismissal under Rule 12(b)(6) for failure to exhaust is appropriate if such failure is

evidenced on the face of the complaint and incorporated documents."); *Sloane v. Mazzuca*, No.

04-CV-8266, 2006 WL 3096031, at *4 (S.D.N.Y. Oct. 31, 2006) ("[B]y characterizing non-

exhaustion as an affirmative defense, the Second Circuit suggests that the issue of exhaustion is

generally not amenable to resolution by way of a motion to dismiss." (internal quotation marks

omitted)).

  As noted in the Court's September 2014 Opinion, Romero has "not pled that [he]

exhausted [his] administrative remedies" prior to filing his complaints in this Action.  (Opinion

35.)  Indeed, in his SAC, Romero admits that he "did not exhaust [his] administrative

remed[ies]" because of "fear of retaliation from [DOC] officers."  (Romero SAC 8.)  However,

Romero's allegations of generalized fear are insufficient to excuse his failure to exhaust.  *See*

*Brown v. Napoli*, 687 F. Supp. 2d 295, 297 (W.D.N.Y. 2009) (finding the plaintiff failed to

allege any facts to support his claimed fear of retaliation where complaint stated that the plaintiff

did not file a grievance due to his "[f]ear for [his] personal safety and retaliation by correctional

staff"); *Harrison v. Stallone*, No. 06-CV-902, 2007 WL 2789473, at *5 (N.D.N.Y. Sept. 24,

2007) ("[A] general fear of retaliation is *not* sufficient to excuse the exhaustion requirement."

(internal quotation marks omitted)); *Hines v. Valhalla County Corr.*, No. 01-CV-6935, 2002 WL

1822740, at *3 (S.D.N.Y. Aug. 8, 2002) ("If an inmate's allegation of a secondhand retaliatory

threat was enough to allow the inmate to begin litigation without properly filing grievances, the

PLRA's exhaustion requirement could be easily circumvented by all inmates.  A general fear of

retaliation is not an exception to the PLRA's exhaustion requirement." (footnote omitted)). Therefore, as "nonexhaustion is clear from the face of the complaint," *Lovick*, 2014 WL 3778184, at *4 (internal quotation marks omitted), Romero's claims are dismissed for failure to exhaust his administrative remedies.

Little asserts that he filed a grievance with respect to the "[d]enial of law library services," but that it "went unanswered." (Little SAC 22.)  When prompted in his SAC to describe what steps he took to appeal that decision, Little states "the grievance unit at GRVC refused to provide me any grievance [number,] so I could not appeal." (*Id.*)  As noted *supra*, "an inmate's failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies." *See Mena v. City of New York*, No. 13-CV-2430, 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016) (internal quotation marks omitted).  Nor is Little's failure to exhaust excused by his contention that the grievance unit denied him a grievance number. *See Wallace v. Fisher*, No. 13-CV-1208, 2015 WL 9275001, at *2 (N.D.N.Y. Dec. 18, 2015) ("After carefully reviewing the case law, the [c]ourt finds that the weight of authority (and the better-reasoned authority) answers th[e] question [of whether the IGRC's nonresponse to a grievance must be appealed to the superintendent where the plaintiff's grievance was never assigned a grievance number] in the affirmative."); *Collins v. Cunningham*, No. 06-CV-420, 2009 WL 2163214, at *3, *6 (W.D.N.Y. July 20, 2009) (rejecting the plaintiff's argument that administrative remedies were unavailable where his grievance was not assigned a grievance number); *Midalgo v. Bass*, No. 03-CV-1128, 2006 WL 2795332, at *7 (N.D.N.Y. Sept. 26, 2006) (noting that the plaintiff was "requir[ed]" to seek an appeal to the superintendent, even though he never received a response to his grievance, which was never assigned a grievance number); *Hernandez v. Coffey*, No. 99-CV-11615, 2003

WL 22241431, at *4 (S.D.N.Y. Sept. 29, 2003) (rejecting the plaintiff's argument that he was

unable to exhaust because he never received a grievance number, finding he could nonetheless

have appealed any such nonresponse to the next level).  Accordingly, as Little has failed to

exhaust available administrative remedies, his access-to-courts claim is dismissed.[13]

## C.  Dismissal With Prejudice

A complaint should be dismissed without prejudice if the pleading, "'liberally read,'

suggests that the plaintiff has a claim that []he has inadequately or inartfully pleaded and that

[]he should therefore be given a chance to reframe." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d

Cir. 2000) (alterations and citation omitted) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d

794, 795 (2d Cir. 1999)).  If a complaint, however, has substantive problems and "[a] better

pleading will not cure [them]," "[s]uch a futile request to replead should be denied." *Id.* (citing

*Hunt v. All. N. Am. Gov't Income Tr.*, 159 F.3d 723, 728 (2d Cir. 1998)).  Courts are especially

wary of giving plaintiffs multiple "bites at the apple" where a plaintiff has already been granted

leave to amend.  *See Anthony v. Brockway*, No. 15-CV-451, 2015 WL 5773402, at *3 (N.D.N.Y.

Sept. 30, 2015) ("[The] [p]laintiff has already been given one opportunity to amend his

complaint . . . , and there is nothing in his second amended complaint suggesting that [he] could

do better given another opportunity."); *Al-Qadaffi v. Servs. for the Underserved (SUS)*, No. 13-

CV-8193, 2015 WL 585801, at *8 (S.D.N.Y. Jan. 30, 2015) (denying leave to amend where

---

[13] Defendants argue that "Little's claim for injunctive or declaratory relief is moot because he is no longer in DOC custody."  (Defs.' Mem. 32.)  The Court agrees that Little's transfer to Elmira Correctional Facility, a facility operated by New York State, moots his claims for injunctive or declaratory relief against officials of Rikers Island.  *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.").  Therefore, Little's claims for injunctive and declaratory relief that Defendants have not sought to dismiss in the instant Motion are dismissed with prejudice.

"[the plaintiff] has already had one chance to amend his [c]omplaint, and there is still no indication that a valid claim might be stated if given a second chance"), *aff'd*, 632 F. App'x 31 (2d Cir. 2016); *Bui v. Indus. Enters. of Am., Inc.*, 594 F. Supp. 2d 364, 373 (S.D.N.Y. 2009) (dismissing an amended complaint with prejudice where the plaintiff failed to cure the deficiencies identified in his initial complaint despite "being given ample opportunity to do so").

Here, Romero and Little have already amended their pleadings twice, once in response to substantive and specific instruction from the Court.  (*See generally* Opinion.)  There is no reason to suspect that, given another opportunity to amend, Plaintiffs will be able to cure the substantive deficiencies in their respective SACs.  Therefore, those of Plaintiffs' claims that are dismissed herein are dismissed with prejudice.

### III.  Conclusion

In light of the foregoing, Defendants' Motion To Dismiss is granted with respect to all of Romero's claims on exhaustion grounds and is granted as to Little's claims that he was unconstitutionally classified, denied a work assignment, and denied access to the courts.  The Motion is denied without prejudice as to Little's claims for excessive confinement, unsanitary housing conditions, denial of food, exposure to extreme temperatures, and denial of laundry services, as well as his claims of excessive force for the use of chemical agent by Defendant Yousuf and the alleged use of force by Defendant Spears.

Should Defendants wish to file a renewed motion to dismiss on Little's conditions-of-confinement and excessive force claims, Defendants are to submit a pre-motion letter to the Court within 14 days of the date of this Opinion & Order.  Little is to respond within 14 days thereafter.  The Court will then issue a scheduling order as to any viable motion.

Pursuant to the Court's order, (Dkt. No. 162), the stay of discovery is lifted.

The Clerk of Court is respectfully requested to terminate the pending Motions. (Dkt.

Nos. 103, 116.)

SO ORDERED.

DATED:     March 29, 2017
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

28